(No. 19948.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ELLIS PHIPPS, Plaintiff in Error.

*Opinion filed February 21, 1930.*

W. H. DYER, DONALD GRAY, and K. C. RONALDS, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, T. R. JOHNSTON, State's Attorney, and JOEL C. FITCH, for the People.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

On May 7, 1929, the grand jury of Kankakee county returned an indictment against Ellis Phipps, hereafter called defendant. The first three counts in varying language charged defendant with having taken improper and indecent liberties with Darlene Boudreau, a female child of the age of ten years. The fourth count charged defendant with an assault to rape her. Before the trial began defendant moved the court to require the People to elect under which count or counts they would prosecute the case. The motion was denied. Defendant was found guilty by the jury, and after motions in arrest of judgment and for a new trial were denied the court sentenced him to imprisonment in the penitentiary at Joliet from one to twenty-five years. Defendant has sued out a writ of error to review the record.

The prosecuting witness testified she was ten years old. She lived about five blocks from the barber shop, to which she went alone about 4:30 P. M. for the purpose of having her hair cut. Defendant cut her hair and was in the shop alone at the time. She testified he put his knee between her legs while cutting her bangs and made her get out on the edge of the chair, saying he had to hold onto something because something was wrong with the chair. He put his hand under her dress. She had on a suit of underwear and over that bloomers, which fastened around the waist with an elastic band. He put his hand inside the bloomers from under the waistband and unbuttoned her underwear. The second time he did that he put some cold cream on his finger and put his hand inside her bloomers and her underwear and in her private parts and asked if that hurt. She told him it did, and he then began cutting her hair and putting tonic on it. The barber chair was facing toward the window and there was a sidewalk outside the window. He was cutting her hair while doing that. He put his

hand on her privates three times. He told her not to tell her school companions; that if it felt good she could tell him the next time to do it again. She testified she went directly home from the barber shop, about 5:20 or 5:30. She said she was crying and told her mother what defendant had done. Her father returned shortly and went to get the sheriff. She, her father and the sheriff went down to the barber shop.

Defendant moved to strike out the evidence of the witness as to what she did after she left the shop and that she went home and told her mother what had happened. The court ruled that the statement she told her mother or her parents would be stricken but that he thought the evidence was proper so far as the count charging assault to commit rape was concerned. Defendant again moved to require the State's attorney to elect on what count he would prosecute. The court denied the motion but said he would determine later whether the State should be required to elect, and stated the jury would disregard what the witness said to others except on the charge of assault to commit rape.

The prosecuting witness testified on cross-examination that it was not dark when she arrived at the barber shop and that defendant turned on one light while she was there. The chair she sat on was near the window and the shade was up. It was not put down at any time nor was the door locked. She had previously been to the shop a number of times and defendant had cut her hair. She always went to the shop alone. She testified not many people passed by the window while she was in the shop; that a good many employees of the Paramount factory passed along the sidewalk by the shop about 4:30. It was defendant's left hand he put inside her clothes. She did not say a word, or try to get out of the chair, or call or make any noise. She further testified that people were passing by on the sidewalk while she was having her hair cut.

The prosecuting witness' mother testified that her daughter came from the barber shop on January 24, 1929, about 5:30 and was terribly frightened and was crying. The mother examined her daughter a few minutes after she arrived home and found cream of some kind in her private parts but she was not hurt in any way. She examined her bloomers and found cold cream on them. She exhibited the bloomers during her testimony. She went to a neighboring telephone to call up the barber shop, but before she did so her husband returned.

The father of the prosecuting witness testified he returned home from work about a quarter to six. His daughter was not crying when he returned home. He got the sheriff and he and his daughter went to the barber shop on Washington avenue, where Phipps was employed. The father asked his daughter if defendant was the man that cut her hair, and she said yes. Witness told his daughter to tell the sheriff what defendant had done to her, and she did so. Defendant denied what the daughter charged him with but said he cut the daughter's hair; that he had a sore finger, and afterward got some cold cream for it. On cross-examination the witness testified that his wife told him after he had returned home from work what had happened to his daughter.

The sheriff stated he accompanied the father and his daughter to the barber shop, and when they arrived there he asked the prosecuting witness, "Is that the man that done what you said?" and she said, "Yes." An objection to the question and answer was overruled. Defendant said there was some mistake. The prosecuting witness repeated what had happened, and said, "Now, you know you did," to defendant. Defendant denied it but said he put some cold cream on a sore finger. On cross-examination the sheriff testified defendant had a slight injury, which he thought was on his left forefinger. Defendant told the prosecuting witness' father to have the girl examined by

a doctor. The girl at that time did not seem to be excited. The witness testified the barber chair was the first one from the window and there was room to walk between it and the window.

It was admitted defendant was about forty-five years old. The foregoing is substantially all the testimony for the People.

Defendant testified in his own behalf that the barber chair at which he worked was next to the north window and right by the door. The window opposite the chair covered one side next to the door on the north wall. At the time the prosecuting witness was in the shop the shades on the window were up. There was a bright light of one hundred watts or more right over the chair. Just as the prosecuting witness got in the chair defendant turned on the lights. He testified he did not put his hand under the girl's dress or inside her bloomers at any time. She had a hair-cloth, which was approximately three feet wide, over her and around her neck. It covered the whole arm of the chair unless it slipped off. To the best of his memory the prosecuting witness was resting her arms under the cloth and he never put his hand under that cloth. He spoke to her about moving forward so he could even up her bangs, but he did not at any time put cold cream under her bloomers. He did not say anything to her about not telling what he had done. He said nothing about the chair being out of order and did not put his knee between her legs at any time. He did not tell her that if she liked the feeling he would do it again. People were passing each way on the street at the time he was cutting the child's hair and there were cars parked in front of the shop. People on the opposite side of the street could have seen into the shop. People leaving the Paramount factory passed by the shop. He noticed people were passing but he never gave a thought to that. He testified he injured his finger while shaking the stove about four o'clock, before the prosecuting witness

came in. He put no cold cream on the wound while prosecuting witness was in the chair, but afterward, before she left the shop, he did so. While she was in the chair he did not touch any cold cream. When the sheriff, the prosecuting witness and her father visited him at the barber shop, the defendant testified, the prosecuting witness did not accuse him of having his hand on her privates; that no one accused him of that until the day before the witness testified. He testified he was not accused at the preliminary hearing of putting cold cream on the girl's privates, although it was testified by witnesses that they found cold cream, or something like it, on her bloomers.

Frank Luwen, a witness for defendant, testified he is a photographer and took the pictures of the barber shop which were used on the trial. The pictures were taken from directly in front of the shop, about the center of Washington avenue. The camera was about four feet from the pavement, and the sidewalk shown in the picture is the same as it was at the time the picture was taken. The camera was about eight feet from the building in which the barber shop is.

The sheriff was called as a witness for defendant and testified he was at the preliminary hearing of the case when the prosecuting witness testified something to the effect that defendant had his finger on her private parts, but he did not hear her testify that he had his finger in her private parts. The deputy sheriff, called as a witness for defendant, testified he heard the prosecuting witness testify on the preliminary hearing and did not remember she testified defendant had his finger in her private parts on that occasion. Wallace Roberts testified the prosecuting witness did not say at the preliminary hearing defendant had his finger in her private parts. William Wolfe testified to the same thing. That is substantially all the testimony offered on the trial.

After the close of the People's evidence the State's attorney *nollied* the fourth count of the indictment, and the

court directed the jury to disregard the testimony of the prosecuting witness with reference to what she said she told her mother, as it was incompetent on the charge of taking indecent liberties. Defendant contends the court erred in not requiring the State's attorney to elect before the trial began, as it was only because of the fourth count that the evidence of what the prosecuting witness told her mother about defendant having committed the crime was admitted, and that striking the testimony and so instructing the jury did not cure the damage done by the admission of the testimony.

It is also contended that the court erred in giving instruction No. 1 to the jury. Instruction No. 1 was in almost the same language as an instruction in *People* v. *Crane,* 302 Ill. 217, where it was said: "The statute under which this prosecution was brought defines more than one crime. It provides that one who shall take any immoral, improper or indecent liberties with any child of either sex under the age of fifteen years with the intent there specified shall be imprisoned in the penitentiary not less than one nor more than twenty years, and also provides that if such person shall attempt to take such indecent liberties with such child he shall be imprisoned in the penitentiary for not less than one nor more than twenty years. Under the instruction given, if the jury thought that the evidence showed an attempt to take indecent liberties but that it did not show the accomplishment of the crime, they might nevertheless have felt justified, under such instruction, in returning a verdict of guilty under a charge of taking indecent liberties though the proof showed an attempt, only. Counsel for the State argue that it is not error to give an instruction in the language of the statute. This is sometimes true, but where the statute defines more than one crime, as is the case in the section referred to, such rule cannot apply. The contemplation of the law is that the jury shall be instructed only concerning the crime of which the defendant stands

charged, and it is not a sufficient answer to say that the instruction is in substantially the language of the statute. (*People* v. *Jones,* 263 Ill. 564.) Without discussing further the testimony which is in this opinion set out pertaining to the crime charged, we are of the opinion that the giving of this instruction was prejudicial error." Defendant in error admits the instruction was too broad and should not have included other crimes than taking indecent liberties with a child, but contends the instruction was harmless, as there was no evidence of the commission of any crime other than that of taking indecent liberties, and relies on *People* v. *Peck,* 314 Ill. 237, and other cases. Some other objections were made to giving People's instruction No. 5 and refusing defendant's instruction defining reasonable doubt. While there is some merit to the objection to these two instructions, we shall not discuss them in view of the conclusion we have reached that the case should be reversed for other reasons.

The crime of taking indecent liberties with a child is a very revolting one to all decent-minded people. The evidence in a case of this character is similar to that in the crime of rape. It was long ago stated by Lord Hale in regard to the charge of rape, "that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused though never so innocent." This statement has been approved by this court. In *People* v. *Freeman,* 244 Ill. 590, which was an indictment for taking improper liberties with a female child, the defendant was found guilty and the court applied the rule in charges of rape, and said while in some cases the uncorroborated testimony of the prosecutrix may justify a conviction for rape, in order to do so the testimony must be most clear and convincing. The court said the same rule of law was fairly applicable to the evidence in the *Freeman case,* and reversed the case because the evidence was not sufficient to justify a conviction. We are of opinion that too many

errors of a material character were committed in the case at bar to justify this court in affirming the judgment. The first instruction given by the People was clearly wrong and has been condemned by this court. Then, too, the refusal of the court to require the prosecution to elect on which counts it would prosecute the case left the fourth count in the indictment, which charged assault to rape and was the only basis for admitting the evidence of what the prosecuting witness told her mother defendant had done.

*Stevens* v. *People,* 158 Ill. 111, was a prosecution for assault with intent to commit rape. In that case two witnesses (one the husband of the prosecuting witness) were allowed, over objection, to testify that the prosecuting witness told them that defendant had committed the crime. It was in that case the court quoted with approval the statement of Lord Hale. The court held the testimony given by the witnesses that the prosecutrix told them, in making complaint some time afterwards, that defendant had committed the crime against her was incompetent. The court said: "Accordingly, a witness to the fact of the complaint may state when, where and to whom it was made, but he cannot state the name of the person charged with the offense nor any of the details of the transaction as communicated by the prosecutrix. On the direct examination the practice has been merely to ask whether she made complaint that such an outrage had been perpetrated upon her and to receive in answer only a simple yes or no." If the testimony of the prosecuting witness in this case that she told her mother defendant committed the crime is stricken out, it leaves her statement of his guilt substantially uncorroborated and depending almost entirely upon her testimony and that of defendant.

The People argue that the finding of cold cream on the child's bloomers and on her private parts corroborates her testimony, but such corroboration is very slight. In the *Stevens case, supra,* it was also said that where the evi-

dence on the question of guilt is not such that all honest minds of ordinary intelligence must necessarily come to the same conclusion, the defendant is entitled to have the evidence passed upon by a jury instructed with substantial accuracy as to the law, and where the evidence is conflicting no incompetent testimony should be permitted to reach the jury which might improperly influence its verdict. We think it cannot be doubted that defendant was materially affected by the incompetent testimony in this case and by the giving of the erroneous instructions referred to.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*