(No. 31328.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALBERT WATKINS, Plaintiff in Error.

*Opinion filed March 22, 1950.*

FRANK A. MCDONNELL, of Chicago, (WILLIAM L. CARLIN, and LOUIS A. ROSENTHAL, of counsel,) for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and SAMUEL PAPENEK, all of Chicago, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

Plaintiff in error, Albert Watkins, was indicted in the criminal court of Cook County for taking indecent liberties with a child under the age of fifteen years. The indictment consisted of two counts, the first charging indecent liberties, and the second, contributing to the delinquency of such child. Trial by jury was waived, and after a hearing before the court, plaintiff in error was found guilty as charged in the first count and sentenced to the penitentiary for a term of not less than one nor more than five years. The People entered a *nolle prosequi* as to the second count. Watkins prosecutes this writ of error to reverse the judgment on the grounds that the evidence of the complaining witness was not competent; that the court erred in admitting improper evidence on behalf of the People and in excluding evidence offered by the defense; and that the proof did not establish his guilt beyond a reasonable doubt.

From the record we learn that plaintiff in error was sixty-three years old, and, as the result of a childhood illness, his left hand and the right side of his face was paralyzed. He lived in Chicago with a brother and sister, and because of his years and physical condition was unable to work. The complaining witness, who was seven years old on July 1, 1948, lived with her family in the four rear rooms of a flat in Chicago. A family named Johnson lived in the three front rooms of the same flat. The two living quarters were connected by a door which opened from the Johnson kitchen into the living room of the rear quarters. For a few days prior to January 1, 1949, plaintiff in error, who was Mrs. Johnson's uncle, had been staying with them as a guest. Late in the afternoon of New Year's Day, the nine children of the two families were playing games around the two apartments. Plaintiff in error was sitting in a chair in the living room of the rear apartment, while the rest of the adults were seated in the Johnson kitchen.

Complaining witness stated that while playing hide and seek, her sister, age nine, called her to the bathroom and told her that plaintiff in error "had a bad habit." Just at that time, according to her story, plaintiff in error called the two of them out of the bathroom, and asked the complaining witness to sit on his lap. This she did, and then, she testified, he put his hand beneath her undergarments in the region of her "private" and "itched" her. Just where the sister was at the time is not clear, for she was not called as a witness, nor did complaining witness testify directly to her whereabouts, though she did state that she later told the sister of the incident. On cross-examination she stated that a lady she could not identify had told her the meaning of the word "private" and its location on her body. She also stated that her sister was not present when she sat on plaintiff in error's lap and exhibited some confusion as to whether she had attended a movie that afternoon with some of the other children, and as to the exact whereabouts of her mother when the incident allegedly occurred. Her testimony that plaintiff in error had reached under her clothing and "itched" her "private" was unshaken, however.

The mother of the complaining witness testified that the latter told her of the occurrence about eight o'clock the same evening and that a report was made to the police immediately. The child had testified that she told only her sister, who in turn told the mother. The arresting officer stated that when the complaint was made he went to the residence and, after talking to two children, (who were not identified at the trial,) arrested plaintiff in error.

Plaintiff in error took the stand and denied that he had been alone in the room with the child, that she had sat on his lap, or that he had committed the acts detailed. He admitted that he had been in the rear apartment living room for about ten minutes, but that the only time he had spoken

to any of the children was to tell the older girl to turn off the radio. He stated that he had left the other adults to sit down because of pain he was suffering from a hernia.

As we regard the record, a serious problem is presented by the contention that the uncorroborated testimony of the complaining witness was not sufficiently clear and convincing to establish plaintiff in error's guilt beyond a reasonable doubt. An indecent liberties case is similar in character to that of rape, because it is an accusation easily made, hard to be proved, and harder to be defended by the party accused, though ever so innocent. (*People* v. *Phipps,* 338 Ill. 373.) We have always safeguarded the interests of an accused where the testimony is uncorroborated, by requiring that it should be clear and convincing. We have carefully examined, and re-examined, the record before us, and are of the opinion that the testimony presented is not of the clear and convincing quality required to support a conviction in such a case. The principal uncertainty centers around the whereabouts of the older sister at the time the indecent acts were allegedly committed. On direct examination prosecutrix stated that plaintiff in error called her and her sister over to his chair; on cross-examination she stated that her sister was not there. There is some intimation in the testimony of the complaining witness that the older sister knew the purpose for which plaintiff in error called the girls to his chair, yet the sister was not called as a witness and therefore no elaboration was made on this vital point. There is further doubt as to whether the prosecutrix made a complaint to her mother, or whether the older sister did. A spontaneous complaint by the prosecutrix would have added to the credit of her story. The record further leaves to inference that it was these two girls to whom the police officer spoke before he arrested plaintiff in error. In the absence of any testimony corroborating that of the complaining witness, or circumstances in

evidence to support and lend credence to it, and further, in view of the absolute denial of the plaintiff in error, such inconsistencies and lapses in the record create a doubt which must be resolved in favor of the plaintiff in error. We are of the opinion that the interests of justice would best be served by granting the plaintiff in error a new trial.

Because of the possibility that the other errors assigned could arise again on a new trial, we shall also give them consideration at this time.

It is contended by plaintiff in error that the complaining witness was incompetent to testify; that she was not capable of understanding the nature and meaning of her oath to tell the truth; and that even if she were a qualified witness, her testimony was of dubious credibility. On the issue of her ability to understand and appreciate her moral duty for speaking the truth, complaining witness testified that she was in the first grade of Our Lady of Sorrows School and that she attended Our Lady of Sorrows Church. Upon being questioned: "Do you know what it means when you raise your hand and you promise to tell the truth?" She answered, "You are supposed to tell the truth and nothing but the truth." Again, upon being asked if she would tell the truth and just the truth, she responded, "Yes." On cross-examination she further testified that her nine-year old sister and her parents told her to tell the truth; that no one explained to her what it meant to tell the truth. In response to a question as to what it meant to tell the truth, she answered, "It means you are supposed to tell the truth; if you don't tell the truth, you are supposed to be punished." From the foregoing, it is apparent that the witness was of average intelligence commensurate with her age, and knew what it meant to take an oath to tell the truth.

Counsel for plaintiff in error contends that we should take judicial notice of certain scientific studies made by the staff of the Yale Clinic of Child Development, in which

they find that children of seven years sometimes do not have the capacity to tell the truth. Further, on the basis of such study, it is strongly urged that much of complaining witness's story may have resulted from a dominating influence exercised by the older sister who told the former that plaintiff in error had a "bad habit." Such objective scientific findings, while persuasive to a certain degree, are of little legal value to the necessity of a subjective finding which confronts us. We have frequently held that children of this age may be competent to testify. (*People* v. *Crowe*, 390 Ill. 294; *People* v. *Fitzgibbons*, 346 Ill. 338; *People* v. *Schladweiler*, 315 Ill. 553; *People* v. *Peck*, 314 Ill. 237.) Whether or not witnesses shall be permitted to testify, where an objection is interposed to their competency because of age, is a matter resting largely in the discretion of the trial court. (*People* v. *Karpovich*, 288 Ill. 268; *People* v. *Schladweiler*, 315 Ill. 553.) From the record, we are of the opinion that the discretion was not abused in this case and that it was not error to permit the child to testify. In the absence of any testimony by the older sister, we are unable to say that she dominated the prosecutrix in this situation.

Nor can we agree with the further contention of plaintiff in error on this issue, that he was unduly limited in his cross-examination of the witness as to her qualification to testify. After the child testified that her parents and sister had told her to tell the truth, the court sustained an objection to a question asking her who it was had told her that if she didn't tell the truth she was supposed to be punished. Counsel argues that it was prejudicial error to prevent the defense from finding out who was coaching or influencing the complaining witness. To support such innuendo it is pointed out that her use of the word "private," indicating the area on her person, was unusual for a child of her age. It is natural that a child of her years would have difficulty in describing these portions of her person.

460

The mere fact that language was suggested to her, by which she might express herself modestly, is not sufficient to reject her testimony. (*People* v. *Johnson*, 298 Ill. 52.) During such questioning the only qualification to be determined was the ability of the child to know what it meant to tell the truth. The trial court did not err in limiting the questioning to that issue.

From the record here, we are of the opinion that the judgment of conviction is based on unsatisfactory evidence, uncorroborated in any detail, which leaves an abiding doubt as to plaintiff in error's guilt. For this reason, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*