(No. 34655.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES HINTON, Plaintiff in Error.

*Opinion filed September 18, 1958.*

THOMAS P. SULLIVAN, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, WILLIAM H. SOUTH, FRANCIS X. RILEY, and JOHN J. STAMOS, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

James Hinton was indicted in the criminal court of Cook County for the offense of taking indecent liberties with a child and contributing to the delinquency of a minor. (Ill. Rev. Stat. 1957, chap. 38, pars. 109, 104.) He pleaded not guilty and waived a trial by jury. The court found him guilty of both offenses and sentenced him to the penitentiary for a term of not less than five nor more than ten years. He prosecutes this writ of error, and his sole contention is that the evidence is insufficient to sustain the judgment.

James Sanders and Elliot Cooper, both eight years of age, testified that on the afternoon of Sunday, September 4, 1955, they approached a man outside a motion picture theater in Chicago and asked him for money to pay their admission. Both boys testified that the man, whom they identified as the defendant, said, "First you go up to my house." Both boys testified that Cooper refused, but Sanders accepted. Sanders testified that he went with the man to his home where the acts charged in the indictment took place. The criminal nature of such acts is not disputed, and it is unnecessary to describe them. Sanders testified that the man then gave him thirty-five cents and he went to the movie and returned home about 8:00 o'clock in the evening. On cross-examination, Sanders described the room in which the offenses were committed.

Police officer Williams testified that on the afternoon of September 4, 1955, he had a conversation with Sanders, and as a result proceeded "to look for a man who had taken liberties with children in the neighborhood." In the course of this investigation he stopped defendant and questioned him about a red bicycle. Defendant denied owning such a bicycle. According to his own testimony, however, defendant had been riding such a bicycle immediately prior to his arrest. Officer Williams took the defendant into custody. Williams testified that shortly thereafter, in the presence of

defendant, Sanders told his story, and Cooper also identified defendant as the man who had spoken to him and Sanders outside the movie. Officer Williams testified that defendant said, "I don't know what they're talking about."

The defendant objected to Sanders's competence as a witness, and a *voir dire* examination was conducted to determine the extent of his general knowledge, and his ability to remember and to report what he remembered. He did not remember when he first went to school, and he was unable to state whether or not he had finished a grade at school. There were other instances of failure to answer simple questions. At the conclusion of the examination, the trial judge ruled that the boy "would not be a competent witness for the purpose of placing events in time in the past * * *." The same ruling was made as to Elliot Cooper after a similar preliminary examination.

Sanders testified that he and Cooper first saw defendant outside the theater about 4:30 P.M.; that he knew it was 4:30 because he had asked the lady at the ticket window, and that he saw officer Williams later on in the day. On cross-examination, he repeated that he had seen officer Williams when he came out of the theater, but, upon further interrogation, said that officer Williams told him to go home and go to bed and that it was "around four o'clock when I came home." Subsequently he testified that he saw the defendant for the first time on the day in question "around about nighttime," and apparently in the company of officer Williams. He was then asked, "Where were you at 4:30 that day?" The assistant State's Attorney objected on the ground that the question had been answered, and said, "He said he was in front of the show." An objection to this attempt to prompt the witness was sustained. Despite the prompting, he answered: "I was at home. Yes, I was at home." On redirect Sanders was asked whether he went to the movie in the morning or in the afternoon. He answered, "I think it was in the afternoon." He also testified

on redirect that after he went to the movie he did not see officer Williams.

There are discrepancies in Cooper's testimony also. On direct examination he did not correct the prosecutor when his questions fixed the time of the encounter in front of the movie in the afternoon of September 4, 1955. On cross-examination he said the encounter took place in the morning. He repeated this statement on redirect, but when he was asked, "And had you eaten your lunch?" he answered, "Yes, sir."

Dorothy Sanders, the mother of James, was called by the prosecution and testified as to his age. Later she was called as a witness for the defense, and testified that her son was at home with her on the afternoon of September 4, 1955, and that she knew he was "Because I was there cooking dinner." On cross-examination she testified that he might have left the house to play for a while, after the television program. She also testified that she did not remember what took place on September 4, 1955, and that she "couldn't say what date it was," but her attempts to explain were cut off by the prosecutor.

The defense was an alibi, testified to by defendant himself, by the woman defendant was about to marry, and by her fifteen-year-old daughter and her twelve-year-old son. It covered the period from early morning on September 4 until 5:30 or 6:00 P.M.

On this record we can not say that the defendant's guilt was established beyond a reasonable doubt. If any offense was committed, it seems reasonably clear that it did not occur at the time fixed in the bill of particulars. It is not supposed that an eight-year-old child will remember details with the accuracy normally expected of his elders. But this does not warrant a relaxation of the requirement that the guilt of an accused person be proved beyond a reasonable doubt. As we have pointed out on more than one occasion: "An indecent liberties case is similar in char-

acter to that of rape, because it is an accusation easily made, hard to be proved, and harder to be defended by the party accused, though ever so innocent." (*People* v. *Williams,* 414 Ill. 414, 416; *People* v. *Watkins,* 405 Ill. 454, 457.) Perhaps the many serious contradictions in this record can be reconciled, but in the absence of a convincing reconciliation a conviction can not be sustained. For this reason the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*