People of the State of Illinois, Plaintiff-Appellee, v. James S. Newsum, Defendant-Appellant.

Gen. No. 51,695.

First District, First Division.

September 16, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Saul Brauner and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Sheldon Schapiro, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a jury trial, defendant was convicted of the offense of indecent liberties with a child. He was sentenced to the penitentiary for a term of from two to eight years. On appeal, defendant contends he was not proved guilty beyond a reasonable doubt.

The complaining witness was a twelve and one-half-year-old boy, who lived at 1800 North Richmond Street, Chicago. At the trial he testified that on December 16, 1965, at approximately 8:00 p. m., his mother gave him a dollar and sent him to a store one block from home to purchase a carton of Royal Crown. On the way he met defendant, whom he did not know, and who asked him to take a walk and told him there was money involved, a couple of dollars. After some conversation, he accompanied defendant to defendant's apartment, about a block and a half from the boy's home. While there, the defendant performed several acts of deviate sexual conduct on the boy. Defendant then gave the boy a dollar and drove him to the store in a "1956 or 1957 green Plymouth."

When the boy arrived at home, he gave the dollar bill to his mother but did not tell her what had occurred in defendant's apartment until the following night. The police were called and, after they interrogated the boy, he went with the police to the defendant's building, which contained 47 apartments. The boy pointed out defendant's apartment, and the police secured a key from the caretaker and with the boy they entered defendant's apartment. Defendant was not there at the time.

On cross-examination, the complaining witness testified that he had lived at 1800 North Richmond for approximately six years and was familiar with the neighborhood and the different streets in the area. Before the night in question, he had seen defendant's apartment building several times when he had gone to a swimming pool. There were large apartment buildings to the north and south of defendant's building.

Roy Handler, a Chicago police officer, testified that on December 17, 1965, at about 8:30 p. m., he and his partner interviewed the complaining witness and his parents about the incident. The boy furnished the officers with a description of the defendant and then took them to an apartment building at 1742 North Humboldt Boulevard. As they walked into the lobby of the building, the boy pointed to a door and stated that it was the apartment. There was no name on the door or on the doorbell. The caretaker of the building was requested to open the apartment, and they all entered, the police, the boy and the caretaker. They all remained in the apartment for a few minutes. Because of defendant's objection, Officer Handler was not permitted to describe what he saw in the apartment.

Another witness for the State, John A. Cooney, a Chicago police detective, testified that he and his partner arrested the defendant in his apartment at 11:35 p. m. on December 17, 1965. Defendant was taken to the Homicide and Sex Bureau at 2138 North California Avenue. Later, the boy and his parents came to the station, and the boy pointed at defendant.

Officer Cooney further testified that prior to defendant's arrest, they knocked on his apartment door, and defendant answered the door. The officer identified himself and told defendant the nature of the charge. The arrest was made inside the apartment. The court permitted the officer to describe the apartment.

Defendant testified in his own defense and in substance denied the boy's testimony. He was employed and lived at 1742 North Humboldt Avenue. On December 16, 1965, he had worked until 4:30 p. m. He had dinner with his sister and her boyfriend at Walgreen's, where they stayed until approximately 6:30 p. m. He then purchased a bottle of beer and some potato chips and returned to his apartment, where he spent the evening alone. At that time he owned a 1956 green Ford. He had never

seen the complaining witness before he saw him at the police station on the evening of December 17, 1965. Defendant testified that when the boy arrived at the police station, "the detective asked him, 'Is this the man?' And the kid just shook his head. He said nothing, he just shook his head." On cross-examination, defendant stated that on his arrest he had said, "I'm not guilty because it's the boy's word against mine. I was pretty perturbed."

Hallie Rollins, the caretaker of the building at 1742 North Humboldt, testified for the defense. The building had 47 apartments. She stated that police officers came to her on the night in question and ordered her to open the door of defendant's apartment because a crime had been committed there. They had a young boy with them, and she did not recognize the complaining witness as the boy who came with the officers. After threats of arrest, she opened the door for police. Later that night two plainclothesmen came and, under protest, she gave them the key to defendant's apartment, and they opened it themselves.

Defendant's first contention is that the police illegally entered his home, and any testimony which described his apartment was evidence which should have been suppressed. Defendant's pretrial motion to suppress was held by the court for disposition during the trial. In support, defendant cites People v. Albea, 2 Ill2d 317, 118 NE 2d 277 (1954), where the court said (p 322):

> "However, we cannot be unmindful of the principles established by long precedent which have sought to preserve the sanctity of the home and the right of privacy of the individual merely because the evidence has changed from inanimate to animate form. It has been held that an illegal search cannot later be justified by the discovery of contraband property. . . . We see no reason for a different rule in this case when the ends of justice sought to be maintained are the same.

223

"This State had steadfastly adhered to the theory of inadmissibility of evidence obtained by illegal search . . . ."

In People v. Albea, supra, it is also said (p 321):

" 'The principle seems clear that evidence obtained independently of the illegal search may be used against the defendants,' . . . . 'It is only necessary for us to determine whether it has been shown the testimony of the witnesses was received from independent sources.' "

Three witnesses for the State were questioned about the interior or layout of defendant's apartment: (1) The complaining witness, who gave a detailed description of the apartment on his direct examination; (2) Officer Handler, who entered the apartment in defendant's absence; and (3) Officer Cooney, one of the arresting officers, who entered the apartment to arrest defendant. The trial court admitted descriptive testimony of the apartment by the complaining witness and Officer Cooney and sustained objections to Officer Handler's description of the apartment.

The State contends that both entries of defendant's apartment by police officers were proper, because at both times the officers entered defendant's home to arrest him for a crime which they had reasonable grounds to believe that defendant had committed. Cited in support is People v. Barbee, 35 Ill2d 407, 220 NE2d 401 (1966), where it is said (p 411):

"A police officer may arrest without warrant 'when a criminal offense has in fact been committed, and he has reasonable grounds to believe that the person to be arrested has committed it.' (Ill Rev Stats 1961, chap 38, par 657; cf. Ill Rev Stats 1965, chap 38, par 107–2.) And when an officer is authorized to make an arrest, he is also authorized 'to break open

a door or window of any building in which the person to be arrested is or is reasonably believed to be, if he is refused admittance after he has announced his authority and purpose.' (Code of Crim Proc, Am Law Inst Official Draft (1930) sec 28; see Ill Rev Stats 1965, chap 38, par 107–5(d), which became effective Jan 1, 1964.) It is of course true that in the present case the officers who entered Barbee's home made no arrest. But this circumstance can not be significant. Just as 'a search is not to be made legal by what it turns up,' (United States v. Di Re, 332 US 581, 595, 92 L Ed 210,) so the legality of the conduct of the officers in this case is to be determined upon an appraisal of the situation that confronted them, and not upon the success or lack of success of their efforts."

 As to the first entry of defendant's apartment by police officers, the record does not indicate that the officers announced their authority and purpose before entering the apartment. Here the trial court correctly sustained the objection. As to the second entry by the officers, Officer Cooney testified that they did knock on the door and, when defendant opened the door, the officer identified himself and his purpose. Defendant testified that he heard the knock, and by the time he got to the door it was opened as far as the latch, and "I had to unlatch the door and Officer Cooney entered and took me to the Shakespeare station." The testimony of the boy purported to be what he saw on his initial visit to the apartment on December 16, 1965, and the testimony of Cooney about the apartment was of what he saw after defendant was arrested in the apartment on December 17, 1965. We see no error here.

 Defendant also complains that the police station identification violated his constitutional right to due process because there was no lineup and his counsel was

not present. (Stovall v. Denno, 388 US 293.) We are not persuaded that the station identification procedure here was improper or impaired the testimony of the complaining witness. He had described the defendant to the police and led them to defendant's apartment, where defendant was found later. After defendant's arrest, we think it was proper procedure for the police to notify the complaining witness and his parents to come to the police station for identification purposes. The individual confrontation at the police station neither suggested nor induced defendant's identification by the complaining witness. See People v. Harris, 92 Ill App2d 412, 416, 236 NE 2d 281 (1968). The "in-court" identification of the defendant by the complaining witness was positive, clear and convincing, and it was not tainted by the earlier police station identification. We find no error here.

Considered next is defendant's contention that he was not proved guilty beyond a reasonable doubt. Defendant asserts that a charge of indecent liberties is an accusation easily made, hard to be proved, and harder to be defended by the party accused. Defendant cites People v. Hinton, 14 Ill2d 424, 152 NE2d 830 (1958). Defendant argues that his conviction rests entirely upon the testimony of the complaining witness, a child of tender years, and the evidence "must be so clear and convincing as to remove even a shadow of doubt. To be satisfactory this testimony must be consistent with the surrounding facts and circumstances. Where such evidence is not clear and convincing, this Honorable Court must reverse the causes." Defendant cites People v. Williams, 414 Ill 414, 111 NE2d 343 (1953), an indecent liberties case, where the court said (p 416):

> "We have always safeguarded the interests of an accused where the testimony is uncorroborated, by requiring that it should be clear and convincing. . . . 'When a conviction of taking indecent liberties with a child depends upon the testimony of the prosecut-

ing witness, and the defendant denies the charge, there must be substantial corroboration of the prosecuting witness by some other evidence, fact or circumstance in the case. . . .' "

Defendant questions at length the testimony of the complaining witness and asserts it was not natural for a child to wait until the next evening before he complained about what had happened. Also, in leading the police to the building with 47 apartments, he selected the first apartment he saw upon entering the building, and "the tenant was not in so a description of the apartment was observed. If the boy was in the apartment the previous night, he didn't holler, scream or fight off his alleged attacker, the answer is simple, he wasn't there. The only time he saw the apartment was when he and the police entered it on the next night for the first time."

The State argues that the record shows no motive on the part of the complaining witness to accuse the defendant falsely. He was twelve and one-half years old and in the 8th grade at school. He was the recipient of several awards for achievement in school, and he was able to clearly relate what happened. Also, all of the facts related by the complaining witness were unimpeached by defendant on cross-examination.

We conclude that the testimony of the prosecuting witness was clear and convincing. The description by the boy of the defendant's apartment as he saw it on the night of the incident was corroborated by Officer Cooney. Why the boy failed to promptly report the incident to his mother and why he did not resist the defendant were questions to be considered by the jury when it came time to consider the credibility of the witnesses and to reach a verdict.

■ The totality of the State's evidence, if believed by the jury, was sufficient to establish defendant's guilt beyond a reasonable doubt and met the requirements nec-

■

essary to sustain defendant's conviction in a case of this nature.

For the reasons given, the judgment of the Circuit Court is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.