**People of the State of Illinois, Plaintiff-Appellee,
v. Devery Bryant, Defendant-Appellant.**

**Gen. No. 53,977.**

First District, Fourth Division.

March 25, 1970.

Gordon H. S. Scott and Michael Green, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED

Contributing to the sexual delinquency of a child. Ill Rev Stats 1967, c 38, § 11–5(a)(3).

JUDGMENT

After a bench trial, defendant was found guilty as charged and admitted to probation for one year, the first 60 days to be spent in the House of Correction.

CONTENTION RAISED ON APPEAL

The evidence did not prove defendant guilty beyond a reasonable doubt.

EVIDENCE

Vernessa Long, for the State:

She is twelve years old and in the sixth grade. She lives at 4379 South Lamon. On November 30, 1968, she saw defendant and his friend, Eddie Redwood, at de-

fendant's home at 1926 South Kedzie. She had seen defendant before that day, at her girl friend's house, 4304 South Cicero, but didn't know him well. The incident occurred at defendant's home. She and Amy (age 17) went there together. Amy saw the two boys and "we was walking and then Devery had called Amy and Amy went over there and I was right behind and then Amy had went in the basement with Eddie," but Vernessa stayed outside. Then defendant dragged her in. Amy was with Eddie Redwood in the basement. Witness had never been in that basement before.

Defendant asked her if she wasn't "going to give him some." She said no. Defendant then pulled down her shorts and panties, unzipped his pants, and "stuck hisself" in her. This happened "around about 12:30 in the morning or afternoon, at night."

Witness did not go home that night (Friday) ; rather, Amy "went and got" someone named Curtis, and the witness stayed overnight with him at his friend's house. She went home Saturday morning. She did not tell her mother about what had happened until the following Tuesday, although she had been home with her for three days. Her sister found out about it from a girl friend and asked the witness about it. This was on Tuesday and she then told her mother, who sent the witness to see a Dr. Miller. She was hesitant to tell anyone before that time because defendant had slapped her and told her not to tell anyone.

Devery Bryant, defendant, on his own behalf:

On the night in question, he was at 4304 South Cicero, where "we was visiting a girl named Carolyn Schackleford's house and we was over there until around 12:00, 12:00 or 1:00." The complaining witness and Amy were there. Amy's mother had been calling for her telling her to come home, "so, when her mother come over there she [Amy] left out the back door."

37

Defendant, Eddie Redwood, and "a boy named Curtis" left around midnight. They caught a bus and then the elevated and took it to 19th and Kedzie (a total distance of about 5 miles). Amy and Vernessa (the complaining witness) were on the elevated and also got off there. Amy said she was going to her auntie's house. Defendant and Eddie walked Curtis home and returned to where defendant lived. His auntie said the house was cold and he went into the basement to put some coal in the stoker. Amy and Vernessa were already down there. Defendant has a band that practices there and the basement is open all the time. We told them they had to leave, and they did, saying they were going to a restaurant. Amy called defendant around 3:00 a. m. and his auntie told her that he [defendant] couldn't be receiving calls that late.

Defendant did not so much as touch Vernessa at any time, nor did he push her into the basement, or open his pants.

Eddie Redwood, on behalf of defendant:

Defendant is a good friend of his. His testimony was substantially similar to defendant's with respect to the night in question, particularly corroborating defendant's testimony denying the acts charged. Additionally, he testified that he did not "[play] around with" or touch Amy, in the basement.*

---

* HEARING IN AGGRAVATION AND MITIGATION

Defendant is 17 years old and has no criminal, or juvenile, or arrest record. He was employed in his second year at the Urban Progress Center as a storekeeper's helper on the Neighborhood Youth Corps program. A fellow employee, Rosemary Love, defendant's supervisor, testified that he is honorable and trustworthy, and responsible in his job; and that when defendant heard the police were looking for him, he went to them unaware of what had happened.

## OPINION

█ Defendant's sole contention on this appeal is that the State failed to prove him guilty beyond a reasonable doubt. We are cognizant of the problems that exist in the proof of sex crimes. We consider the offense of contributing to the sexual delinquency of a child to be of the same genre and subject to the same evidentiary standards as those which are applied in rape cases. Just as "an indecent liberties case is similar in character to that of rape" (People v. Watkins, 405 Ill 454, 457, 91 NE2d 406), so is the instant offense. As the court stated in Watkins:

> it is an accusation easily made, hard to be proved, and harder to be defended by the party accused, though ever so innocent. (People v. Phipps, 338 Ill 373.) We have always safeguarded the interests of an accused where the testimony is uncorroborated, by requiring that it should be clear and convincing.

█ Upon a thorough review of the record, we find that the testimony of the twelve-year-old complaining witness is not very satisfactory. We agree with defendant that, because her testimony is uncorroborated and is not of the clear and convincing quality necessary for conviction, it leaves a reasonable doubt as to his guilt. Although it is not contested that Vernessa was in the basement of defendant's house, she did not explain her presence in that area (in violation of the curfew) at the time defendant and his friend arrived. Nor are we given adequate rationale to explain her staying away from home until the following day. Although repeated references are made by each witness to Vernessa's friend Amy, who, according to all witnesses, was present at the time of the alleged occurrence, Amy did

39

not testify, thereby leaving Vernessa's version without any corroboration from its most logical source. An additional question is raised as a result of her not mentioning the occurrence to her mother for three days, and then only at the behest of her sister. There was also no testimony from the doctor to whom Vernessa was taken at that time. Compare People v. Carruthers, 379 Ill 388, 393, 41 NE2d 521. These omissions detract greatly from the testimony of the complaining witness, and, considering defendant's strong denial of guilt and the corroborative testimony of his eyewitness, we believe that the evidence presented is insufficient. People v. Nunes, 30 Ill2d 143, 146, 195 NE2d 706; People v. Williams, 414 Ill 414, 416, 111 NE2d 343.

Were it not for our conclusion to reverse defendant's conviction outright, we would reverse and remand for a new trial, because the trial court's determination that the 12-year-old complaining witness was competent to testify failed to meet established standards. The court's complete preliminary inquiry of this witness is set out in the record as follows:

> MR. TRUSCHKE (Asst. State's Attorney): Q. "Do you know what it means to tell the truth?"
> A. "Yes, sir."
> Q. "Do you know where you're at today?"
> A. "Yes, sir."
> Q. "Do you know who that man sitting up there is?"
> A. "Yes, sir."
> Q. "Who is he?"
> A. "The judge."
> Q. "What happens if you don't tell him the truth?"
> A. "(No response.)"

Q. "Are you going to tell him the truth?"
A. "Yes, sir."
MR. TRUSCHKE: "Ask for a rule on competency, your Honor."
THE COURT: "She is competent."

For a rather full discussion of why we believe this kind of limited inquiry constitutes an abuse of the court's discretion, see People v. Sims, 113 Ill App2d 58, 251 NE2d 795, and the cases there cited. While this point has no direct bearing on the disposition of this case, it does, when considered along with the generally unsatisfactory testimony of the witness, tend to leave us with a lingering doubt as to whether or not the State's sole witness was competent to testify at all.

The judgment of the Circuit Court is reversed.

Reversed.

DRUCKER and LEIGHTON, JJ., concur.