**People of the State of Illinois, Plaintiff-Appellee, v. James Tillman, Defendant-Appellant.**

**Gen. No. 11,059.**

Fourth District.

October 16, 1969.

Rehearing denied and supplemental opinion December 18, 1969.

25

 

Robert T. Trimpe, of Champaign, for appellant.

L. E. Johnson, State's Attorney, of Urbana, and Dennis Hart, of Champaign, for appellee.

TRAPP, P. J.

Defendant was found guilty of murder by the verdict of a jury. His motion for a new trial was denied and defendant appeals. No issues are raised as to the indictment or the instructions.

It is urged that defendant was not proven guilty beyond a reasonable doubt, particularly in the light of the circumstantial evidence of guilt as measured with the alibi evidence submitted, and that the trial court erred (1) in refusing a mistrial for prejudice of a juror, (2) in excluding evidence that another person had been arrested for the crime, (3) in admitting the evidence of flight by the defendant, (4) in admitting into evidence certain exhibits, and, that the State's Attorney made improper remarks in his opening statement and improper argument to the jury. Finally it is urged that a new trial should have been allowed because of newly discovered evidence.

The deceased, Plankenhorn, was employed as a night janitor at Rick's IGA Store, a food market in Champaign. At 3:31 a. m. on the morning of August 7, 1967, a report of fire at Rick's was received by the Champaign Fire Department. The source of the report remains unidentified. Firemen arrived within two or three minutes of the

report and found an intense fire throughout the building. The body of the victim was found some six feet from the door of the market when the firemen were able to enter an hour or more later. Examination disclosed three gunshot wounds, two of which were capable of causing death.

A .32-caliber copper jacketed bullet was removed from the body during an autopsy. On August 24, 1967, an automatic pistol was found beneath the rear seat of an abandoned automobile located about two and one-half blocks from Rick's. Ballistic tests demonstrated that the autopsy bullet was fired from this gun. On August 23, 1967, a number of shells with copper jacketed bullets were found in a ditch near the store.

It appears that during the month of September pictures of this gun were shown on television and printed in the area newspapers. Shortly thereafter the witnesses, Wittig and Turner, reported to the Champaign police department concerning purchases and sales of the gun which would tend to place possession of it in the defendant at the time of the shooting.

Wittig was a city fireman and a licensed gun dealer. Turner was and had been for some years both a waiter at the Urbana-Lincoln Hotel and a janitor at the Busey State Bank. It appears that he made a hobby of collecting guns and bought from Wittig from time to time. Their testimony at the trial was to the effect that Wittig had purchased the weapon at a gun show in Indiana and thereafter sold and delivered it to Turner about the last of June, 1967, and that Turner had sold it to the defendant during the month of July. The respective sales involved $30 and $35, and installment payments were made. No record of the dates of payments were kept by Wittig or Turner concerning either sale. Defendant was employed as a bus boy at the Urbana-Lincoln Hotel. Turner testified that the gun was delivered to the defendant in the basement of the Busey State Bank. On September 23rd a police detective, Gentille, met Wittig and Turner at the

hotel and thereafter went with Turner into the kitchens to look for the man to whom Turner had sold the gun. Gentille testified that when he and Turner were about three feet distant from defendant, Turner said that this was the man to whom he had sold the gun; that Gentille then told defendant that he wanted to talk with him and that defendant asked what about, and that the witness stated that the conversation was to be had at the State's Attorney's office. He testified that defendant asked and received permission to get his coat and thereupon ran, and he, Gentille, chased defendant for two blocks without success. The witness brought the defendant back from Louisiana some six weeks later.

Defendant was a member of a singing group known as the Golden Stars. On August 6th the group went to Chicago where they sang at two churches. The essence of the alibi evidence is that the group did not return to Champaign until 3:00 a. m. or afterwards. Most members of the group testified to the time as a matter of recollection generally, without references to timepieces. Rose Thadison, defendant's mother, said they returned after 3:00 or 3:30 a. m.; Harold Thadison, defendant's stepfather, fixed the time as around 3:00 a. m.; Louella Goins, defendant's sister, said the return was a little after 3:00 a. m., Joanna Taylor, not related, stated that the return was around 3:00 a. m. David King, defendant's cousin, fixed the return as possibly as early as 2:45 a. m. and William Hampton, no relation, thought the return might have been as early as 2:30 a. m. Defendant says that it was 3:10 a. m. when they arrived at home.

Defendant, his mother, stepfather and sister prepared coffee (said to take ten minutes), drank a cup of coffee or two and went to bed. The Thadison home where defendant resided is described as being less than two blocks from the market. None of the family heard of the activities incident to the fire and learned of it the next morning.

This alibi testimony is measured as against defendant's proximity to the crime scene and the nature of the fire. Investigation of the latter led to an official conclusion that the fire in the market had been set with cans of charcoal lighter fluid scattered in various parts of the building. The battalion chief who arrived with the first fire equipment expressed the opinion that the fire, as he first saw it, had been going for twenty-five or thirty minutes if one assumed the use of flammable fluid. One McDade on patrol as a private security man, testified that he passed the market between 2:30 and 2:50 a. m. and saw no sign of fire or smoke. One Millidge, a route man for a nearby bakery, checked his loaded truck and passed the market at a time estimated at 3:30 a. m. He observed no evidence of fire, but saw two persons walking north on Randolph street. We cannot ascertain whether the individuals were men or women.

Defendant urges that the alibi evidence stands uncontradicted and that such fact is sufficient to create a reasonable doubt of guilt. It seems to be the theory presented that establishing defendant's possession of the gun is circumstantial evidence on an issue of identification. He cites The People v. Guardino, 13 Ill2d 58, 147 NE 2d 338. In that case the "circumstantial evidence" referred to by the court arose through a witness' purported identification of an automobile subsequently traced to the defendant. Such evidence was there measured by uncontradicted testimony which would establish an alibi. Here the sale of the gun to the defendant is a matter of direct testimony. Defendant's identity is not established by circumstances. In The People v. Wheeler, 5 Ill2d 474, 126 NE2d 228, it was similarly contended that the verdict could not stand because there was no direct impeachment of alibi witnesses. It was held that a conflict of evidence does not require reversal, but that the issue is one of credibility for the jury. People v. Habdas, 94 Ill App2d 330, 236 NE2d 731. The jury has the duty to consider

the evidence tending to prove an alibi with all of the other evidence and determine from such whether or not there is a reasonable doubt that defendant was present at the time and place charged. The People v. Pearson, 19 Ill2d 609, 169 NE2d 252.

Defendant denies knowing where the witness Turner lived or being at his home, and particularly denies being there on the morning of August 6th to make a payment on the gun. Turner, testifying about this transaction, was corroborated by the witness, Louis Dyer, who was otherwise unconnected with the matters at issue. The record shows that defendant's testimony as to the time of departure for Chicago on August 6th is directed to the issue of this meeting, and defendant's testimony as to such time of departure varies noticeably from that of his alibi witnesses.

 There was a close issue of proximity of time and place in the structure of the alibi and the events at the market where Plankenhorn was shot. The evidence conflicts and guilt must be fixed by determining the credibility of the witnesses. Such is the function of the jury, which has an opportunity to hear and observe those testifying. A reviewing court will not set aside a jury's verdict of guilty unless the evidence is so palpably contrary to the verdict, or so unreasonable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused. The People v. Ford, 19 Ill2d 466, 168 NE2d 33; The People v. Nicholls, 42 Ill2d 91, 245 NE2d 771; The People v. Sumner, 43 Ill2d 228, 252 NE2d 534.

 Defendant argues that the trial court erred in admitting the evidence of defendant's "flight" when approached by officer Gentille and Turner at the hotel. It is contended that there was no evidence of defendant's "flight" from the scene of the crime and that there was no evidence of "flight" from arrest. It is defendant's position that there must be independent evidence showing defendant's consciousness of guilt, that he had a knowl-

31

edge of the crime and that he was suspect. It is argued "the law should require that some type of proof should be required before this type of evidence may be presented to the jury." It is further argued that in psychological theory an innocent person may flee, or that a person may flee because of knowledge of some other offense which is not evidence of guilt as to the offense charged. It is argued that while the defendant may explain his flight, in most cases he is hard put to remove the implication of guilt, particularly if he must do so in terms of apprehension of arrest for some other offense. In arguing motions before the trial court, counsel urged that defendant's flight might be explained in terms of his parole, or fear of a charge that he possessed a gun on parole, and that it would be unfair for defendant to be compelled to testify in order to explain the alleged evidence of flight.

Defendant's argument as to the "foundation" required before evidence of flight may be admitted is founded upon The People v. Harris, 23 Ill2d 270, 178 NE2d 291 and People v. Cox, 74 Ill App2d 342, 220 NE2d 7. In Harris the evidence concerned defendant's escape from jail where he was being held after surrender on an unrelated charge. It was held that such evidence was not competent in a trial for the offense then charged. In Cox, defendant's companion testified that as defendant was driving his car he drove to flee at the sight of a police car with a flashing red light. There was no evidence in the record that the police were then concerned with the defendant. It was held that such evidence and instruction on flight were error. Here the defendant was sought out at his place of work by a police officer and the man who testified later to selling the murder weapon to defendant. Thereupon defendant departed the scene to make a successful escape.

In the event, defendant did testify for the purpose of supporting his evidence of alibi and to deny that he had bought or possessed the gun. He did not, however, under-

32

■■■■■■■■■■■

take to explain directly, or upon rebuttal after evidence of prior convictions had been introduced into the record, the circumstances of the alleged flight. This record does not support the argument that defendant was unfairly compelled to testify in order to explain the evidence tending to show flight. Similarly, the psychological argument that one may flee in panic, although innocent of the offense, must be weighed in the light of the evidence that he persisted in staying away until returned some six weeks later.

■ ■ The defendant may show, by competent evidence, facts which tend to prove that he did not leave the scene with a consciousness of guilt, or that his actions were consistent with innocence. The People v. Autman, 393 Ill 262, 65 NE2d 772 and The People v. Bundy, 295 Ill 322, 129 NE 189. In The People v. Davis, 14 Ill2d 196, 151 NE2d 308, the court held the testimony that defendant fled when the identifying witness approached him with police officers some six weeks following the date of the offense to be admissible as circumstantial evidence. Circumstances of flight must be considered with all of the other evidence in the case. The People v. Herbert, 361 Ill 64, 196 NE 821.

■ ■ Defendant urges that the trial court erred in failing to grant a mistrial due to prejudice of a juror. Defendant's motion was made after the jury had been picked and some eight witnesses had testified. One Dorothy Workman advised defendant's counsel that she was a fellow employee of a juror who she felt "didn't care for negroes," and that she "thought he should be questioned definitely." She was sworn and examined by the trial judge. The specific remark of the juror upon which she based her conclusion was, by its terms, a response of the juror to statements by Workman. She described the juror as an honest man but "wanted to be sure he was questioned." The date of the discussion between the juror and the witness was not fixed and nothing suggests

that it was related to the murder or to the defendant. No voir dire examination is contained in the record, but it appears to be conceded that appropriate questions were asked and answered as to prejudice and sympathy. The court gave a relevant instruction upon prejudice. Defendant cites The People v. Kirkpatrick, 413 Ill 595, 110 NE2d 519; The People v. Strauch, 240 Ill 60, 88 NE 155; The People v. Cravens, 375 Ill 495, 31 NE2d 938; The People v. Ortiz, 320 Ill 205, 150 NE 708, and The People v. Gold, 38 Ill2d 510, 232 NE2d 702. The factual elements of the cited cases are substantially different. In Kirkpatrick, the juror had served on the panel which had just tried a codefendant. See also The People v. Faulisi, 34 Ill2d 187, 215 NE2d 276. In Ortiz, the juror had expressed prejudice against the defendant then upon trial. In Cravens, the juror had expressed an opinion of defendant's guilt which he concealed on voir dire. That case states the test to be whether the juror is uncommitted upon the issue of guilt or innocence and is prepared to weigh the evidence impartially. The court observed the juror and participated in the voir dire examination. The discretion of the trial court in granting or refusing the motion will not be disturbed unless there is a clear abuse of discretion. The People v. Harris, 38 Ill2d 552, 232 NE2d 721; The People v. Gold, 38 Ill2d 510, 232 NE2d 702.

 Defendant asserts prejudicial error in admitting into evidence defendant's Exhibits No. 29, No. 30 and No. 31, each being a record of defendant's conviction of felony. Upon the trial defendant's counsel stipulated that defendant was the person convicted upon pleas of guilty to five offenses in Louisiana as shown by Exhibit No. 29. Exhibits No. 30 and No. 31 relate to felony convictions in Champaign County. During the trial defendant's objection was that he was taken by surprise at the introduction of Exhibit No. 31, stating that he had not been advised of it. He further objected that there was prej-

udice in showing records of multiple convictions to the jury. It is the theory that the record of one conviction is sufficient for the statutory purpose of impeachment. C 38, § 155-1, Ill Rev Stats 1967. We find no statutory limitations upon the number of records of conviction which may be introduced. The People v. Crump, 12 Ill2d 402, 147 NE2d 76.

People's Exhibit No. 29 shows convictions in Louisiana in 1955 upon pleas of guilty to various felonies. Defendant cites Burgett v. Texas, 389 US 109, 19 L Ed2d 319 (1967), as holding such conviction void because the record does not affirmatively show counsel, or appointment of counsel, for the defendant. Such issue was not raised by objection during the trial, it was not raised in the post-trial motion or in defendant's brief and argument. It is presented for the first time in the reply brief filed. Since the issue was not presented to or passed upon by the trial court, the matter is not preserved for purposes of review within the jurisdiction of this Court. People v. Valentine, 60 Ill App2d 339, 208 NE2d 595; People v. Webb, 80 Ill App2d 445, 225 NE2d 679. In People v. Scott, 89 Ill App2d 413, 232 NE2d 478, records of several convictions were admitted into evidence. On appeal the State's Attorney conceded that defendant had not been convicted under one of the indictments. It was held that there was no reversible error where the matter had not been called to the attention of the trial court and where valid records of conviction for impeachment purposes were presented.

Defendant asserts error in that the trial court failed to grant a new trial upon the basis of newly discovered evidence. The affidavit of one Percy Brown is attached to defendant's motion for a new trial. In substance, it is stated that following the verdict here Brown saw the defendant while waiting for the jail barber and that in such conversation the defendant was told that the witness Turner had tried to sell the gun in evidence to Brown on

35

days which appear to be Wednesday, August 9th, and Saturday, August 12th, following the shooting on August 7th. The gun was found by the police in an abandoned automobile on August 24th. Brown's affidavit stated that he had seen the gun on television and in newspaper pictures and that he was then taken to the jail and examined the weapon. His affidavit is, "I am positive" that the gun examined is the one that Turner attempted to sell to him.

Brown had been convicted of murder some two or three weeks prior to the commencement of the Tillman trial. While a transcript of the hearing on the motion for a new trial is not in the record, the trial court's memorandum states that Brown's attorney, with Brown's consent, testified that several weeks prior to defendant's trial Brown was asked by his attorney if he had any knowledge of the Tillman case. Such inquiry was made at the request of defendant's attorney. The testimony is that Brown had replied that he had no knowledge, and had heard nothing about such case as he was in Detroit at the time of the murder.

From defendant's brief it appears that Brown was present at such hearing, but that he was not called to testify or tendered as a witness. It is now argued that the court did not see the witness testify as in The People v. Saisi, 24 Ill2d 274, 181 NE2d 68, and that his credibility could not be determined from the affidavit.

 Upon this issue defendant has the burden of going forward with the evidence, and it is conceded that Brown was present or available. There are no facts in the record tending to support the defendant's argument that Brown first denied knowledge of the Tillman case because he, Brown, "apparently thought" his attorney was asking if he was involved in that matter.

 Defendant urges prejudicial error in the fact that the widow testified at the trial and asserts that the

36

purpose of such testimony was to prejudice the jury. He cites The People v. Bernette, 30 Ill2d 359, 197 NE2d 436. The record shows that Mrs. Plankenhorn testified as to the residence address of the deceased, that he was employed at night at several markets, that he worked normally on August 6th preceding his death on the night of August 7th, and she testified to the deceased's possession of a sum of money which was never found. In Bernette, a widow's testimony concerning the number and ages of her children was held to be prejudicial in the light of the jury's selection of the death penalty, rather than upon its verdict of guilty.

Defendant contends that there were prejudicial statements in the prosecution's opening and in the arguments made. Such matters are not included in the record before us and we cannot find, for purposes of review, the matters of argument purported to be quoted.

The judgment of the trial court is affirmed.

Affirmed.

SMITH and CRAVEN, JJ., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF PETITION FOR REHEARING

TRAPP, P. J., delivered the opinion of the court.

Upon petition for rehearing we are supplied with a supplemental record containing counsels' statements and arguments. This was not filed at the time the opinion was adopted. Ordered filed, it thereupon became possible to review defendant's contentions that such contained matters so prejudicial that the case should be reversed despite the fact that no objections thereto were made in the trial court. So far as we can find, these matters were not contained in the motion for a new trial, or in the motion for arrest of judgment.

37

It is urged that during argument the State's Attorney misstated the testimony of defendant's alibi witnesses in arguing that defendant and his party left Chicago at 11:00 p. m., rather than that they left a designated address in the City at that hour. Such argument was directed to the jury's consideration of an estimate of the time of travel to defendant's home which was in the vicinity of the scene of the homicide.

 The defendant also argued the element of time based upon the testimony of the alibi witnesses in terms which were equally imprecise. There was, in fact, testimony as to various times by the several witnesses. The case is thus distinguished from The People v. Romero, 36 Ill2d 315, 223 NE2d 121 and The People v. Beier, 29 Ill2d 511, 194 NE2d 280. In the cited cases the argument was upon assumptions made by counsel when there was no testimony or evidence in the record concerning the matter argued. Again, the State's Attorney admonished the jury that his argument was not evidence and the jury should recall the testimony. The court also instructed the jury to this effect. Neither this argument, nor the several other items of argument reiterated, were so prejudicial as to require reversal.

 The petition for rehearing further complains that we did not discuss, at length, the trial court's order entered upon the State's Attorney's motion which prevented the defendant from commenting upon, or introducing evidence that another had been arrested for the homicide. He cited The People v. Pezutto, 255 Ill 583, 99 NE 677, which holds that a defendant may prove a fact or circumstance tending to show that the offense was committed by another. Defendant's given instruction advised the jury that in this case his indictment was not evidence and did not support an inference of his guilt. An arrest has no higher value as evidence of guilt than an indictment. The arrest of another has no

38

more relevance to defendant's innocence than his indictment has to defendant's guilt.

It is further asserted that the trial court's memorandum, noted in the opinion, went outside the record in asserting that a picture of the gun was shown on television and printed in the newspapers. The significant factor is that the witnesses, Turner and Wittig, became aware of the fact that the police had found the gun, for the record shows a report by them to the police. As we read the record, defendant's witness, Rose Thadison, stated that she had seen the gun as shown on television.

Defendant renews the contention that one of a number of records of conviction of defendant introduced to impeach his credibility did not show a felony conviction. Such circumstance is not reversible error within the rule of People v. Scott cited in the opinion.

We adhere to our opinion as supplemented upon denial of rehearing.