THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY JENKINS, Defendant-Appellant.

(No. 57118; ▮▮▮▮▮▮▮▮▮▮

First District (2nd Division)—June 28, 1974.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

728

Arthur H. Grant, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Mary Ellen Dienes, and John F. Brennan, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant, Henry Jenkins, after a bench trial, was found guilty of the offense of contributing to the sexual delinquency of a child (Ill. Rev. Stat. 1971, ch. 38, par. 11—5(a)) and sentenced to a term of 90 days.

Defendant now prosecutes this appeal presenting the following issues for review: (1) whether the complaint upon which the prosecution proceeded was fatally defective; (2) whether the trial court erred in finding that the prosecutrix was competent to testify; (3) whether the trial court erred in permitting the State to introduce hearsay testimony; (4)

whether the trial court properly permitted a witness for the State to identify as marijuana the odor he detected in defendant's apartment; and (5) whether the evidence presented was sufficient to support a finding that defendant was guilty beyond all reasonable doubt.

The complaint in this case charged the defendant with the offense of contributing to the sexual delinquency of a child in that he "performed an act of sexual intercourse with the victim, —— ——" [1] who, at the time of the offense, was 14 years of age. The complaint was signed by the mother of the 14-year-old girl.

The prosecutrix testified that on March 12, 1971, she went to defendant's apartment to visit a girl friend and there saw the defendant, his small son, a man named Earl, and her girl friend Cookie. Once inside the apartment, the witness noticed that they were "smoking reefer and drinking." The witness stated that defendant offered her a "reefer" and also a drink but she refused both. The defendant then told her to go into the bedroom and, when she would not do so, he pulled her there. At this point Cookie said, "* * * watch out! She's going to let you do it," but, the witness testified, "I said I wasn't." The witness further testified that Earl suggested they rip her clothes off; that the defendant disagreed but nonetheless held her while Earl pulled off her clothes; that the defendant held her by the arms on the bed while Earl "had intercourse"; that Earl held her "while Jenkins did it"; and that, during the ordeal, the bed fell.

On cross-examination the witness stated that the defendant had thrown her out the apartment's back door into the parking lot in the rear of the building where her mother found her; that, although she could not recall specifically, she thought defendant's apartment was on the second or third floor of the building; and that the offense occurred on a school night but she could not remember the exact day or time. The witness further testified that she had been in Elgin State Hospital for the 2 weeks prior to her testifying as a witness; that she had been there on one previous occasion for 2 days in February, 1971; and that her mother had committed her each time because of their failure to get along together. She then stated that she had gone to defendant's apartment once before to see her friend Cookie and that defendant was not present at that time.

Officer Cena, a Chicago police officer, testifying on behalf of the State, stated that he first arrived at defendant's apartment at approximately 7 P.M. pursuant to a complaint for narcotics transmitted by the vice control department; that only defendant and his son were in the

---

[1] The name of the 14-year-old prosecutrix has been omitted.

apartment; and that, with defendant's permission, they looked through the apartment "to check for any pot party or narcotics" but found none. As they left defendant's second floor apartment and proceeded down the stairs, the officers encountered the prosecutrix and her mother. The witness noticed that the prosecutrix's clothes were ripped, that she was crying and holding her back, and, when he asked "what the problem was," she responded that she had been raped on the second floor of the building. The officers then returned to defendant's apartment with the prosecutrix and her mother, and, when the defendant came to the door, the prosecutrix identified him as the man who had raped her. The officers proceeded to search the apartment, looking into every room, and noticed an odor but found no narcotics. In the bedroom they found "rumpled up" clothes and bed sheets on the floor and noted that the bed had been broken down. The witness then testified that he had been in the narcotics section of the police force for approximately 3½ years; that he had handled around 150 cases; that he had smelled narcotics; and that, although he had no formal laboratory training, he associated the odor detected inside defendant's apartment with that of marijuana.

The mother of the prosecutrix, testifying for the State, stated that her daughter had asked for permission to go to Cookie's house; that she had instructed her to be home by 6 P.M.; and that at 7 P.M. her daughter had not returned home, the witness went to the defendant's apartment, asked defendant if her daughter was there, and defendant said that she had been there but had gone to the store with his sister. The witness stated that it took a long while for defendant to come to the door, and that she saw no one in the apartment but defendant and his son because of the way defendant opened the door.

The witness further testified that she saw her daughter on the second floor of the same building; that she was bruised, her pants had been torn off her, and she was hollering; that later on a police officer came; that she had called the police earlier because she smelled "dope"; and that she, her daughter, and the officer then went to the defendant's apartment.

At this point in the proceedings defense counsel moved for a directed finding on the ground that the State had offered no evidence of medical tests to demonstrate that sexual intercourse had in fact taken place. The court then permitted the State to re-open its case.

Recalled to the stand, the mother testified that her daughter had been taken to Billings Hospital where she underwent an examination.

Officer Cena stated that the prosecutrix had been taken to Mercy Hospital and, referring to the doctor's report, testified that it stated

there had been penetration and that the prosecutrix's hymen had been "busted" previously. Responding to questions then posed by defense counsel, the witness stated that no sperm was found. Questioned once again by the State, the witness testified that, according to the examining doctor, "there was penetration" and "the vagina was abrasive and more or less forced."

Testifying in his own behalf, the defendant stated that he lived on the second floor at 5447½ S. Racine, denied ever having sexual relations with the prosecutrix, and specifically denied any such conduct on the date in question. On cross-examination the witness stated that the prosecutrix had not been in his apartment.

## I.

Defendant contends that the complaint filed in this matter was fatally defective in that the complaint in the name of the prosecutrix was signed by her mother, and that the complaint bore no verification. The complaint does contain the signature of the mother, which signature was subscribed and sworn to before a representative of the clerk of the circuit court.

■■ In *People v. McCall* (1963), 42 Ill.App.2d 295, 297, 192 N.E.2d 257, this court held that where one person appears as complainant, another signs, and there is no verification: "The concurrence of these errors is sufficient to devitalize the document as an information." On the other hand, our supreme court has held that the failure to verify a complaint does not affect the jurisdiction of the court and a defendant may waive the right to have an information sworn by going to trial without objection. *People v. Billow* (1941), 377 Ill. 236, 239, 36 N.E.2d 339.

Since the complaint in the instant case does not contain the quantity of errors required to devitalize the complaint under *McCall*, the issue here is more appropriately resolved by the holding in *Billow*.

The record of defense counsel's cross-examination of the prosecutrix reveals that he knew of the signature on the complaint. Defendant nonetheless in trial court failed to object to the form of the complaint. By giving notice of his objection at trial, the prosecutrix could have verified the complaint.

■■ It should also be noted that prior to the trial, the record indicates defendant was in court four times with counsel, and that after the finding of guilty a written post-trial motion was filed without listing any objection concerning the complaint presented to the trial court. In our opinion defendant has waived any defects in the complaint. *People v. Childress* (1971), 2 Ill.App.3d 319, 323, 276 N.E.2d 360.

## II.

Defendant contends that the trial court abused its discretion in finding that the prosecutrix was competent to testify.

At trial, pursuant to defense counsel's objection, the court directed the State to establish the witness's testimonial competency and the following colloquy took place:

"Mr. Grant [*sic*: Mr. Gabitis]: Q. Where are you?

A. In a room.

Q. Who is the distinguished gentleman in front of you with the gray hair?

A. The judge.

Q. A judge. Do you know what the difference is between telling the truth and telling a lie is?

A. Yes.

Q. What happens to girls that lie?

A. They get sent away.

\* \* \*

Mr. Gabitis: Q. Honey, do you presently reside at Elgin?

A. Yes.

Q. And did your doctor permit you to testify here?

A. I don't have no doctor. My mother brought me here.

The Court: Go to the question of whether she's competent at the day of the event or had been declared incompetent?

Mr. Gabitis: Q. On March 12, 1971, were you competent on that date?

Mr. Grant: Objection. She can't tell whether she's competent or not.

Mr. Gabitis: Q. Were you at Elgin on that day?

The Witness: A. No.

Q. Were you living with your mother?

A. Yes.

Q. And were you attending school?

A. Yep.

Q. What grade were you in?

A. 10

Q. Tenth Grade?

A. Yes.

Q. What school?

A. Tilden.

Q. Where is that location?

A. 40 South—4747 South Union."

■■ Every person who is 14 years of age is presumed competent to

testify (*People v. Sims* (1969), 113 Ill.App.2d 58, 61, 251 N.E.2d 795) and, since the prosecutrix was 15 years old at the time of trial, her testimonial competency was not subject to question on the ground of minority. Defendant concludes, however, that the prosecutrix was "mentally deranged" and urges that the foregoing colloquy was not sufficient to establish the witness's testimonial competency. His conclusion is unsupported by any evidence contained in the record. Indeed, the testimony offered at trial revealed only that the prosecutrix had been sent to Elgin State Hospital for a brief period of time on two separate occasions, apparently because she and her mother were unable to live together compatibly. Testimonial competency is measured by a witness's ability to understand the nature of an oath and her capacity to observe, recollect, and communicate. *People v. Dixon* (1961), 22 Ill.2d 513, 516, 177 N.E.2d 224; *People v. Cox* (1967), 87 Ill.App.2d 243, 246, 230 N.E. 2d 900.

It has long been held that witnesses are presumed to be competent to testify and the burden is on the party objecting to prove incompetency to testify. *Boyd v. McConnell* (1904), 209 Ill. 396, 398, 70 N.E. 649; Wigmore, Evidence (3d ed. 1940), § 484.

In the instant case it is clear that the witness knew the consequences of failing to tell the truth, and her testimony reflected her ability to observe, recollect, and communicate. She stated the name and address of her school; that she was in the tenth grade (commensurate with the normal education level of a person of her age); and that she was living with her mother at the time of the offense.

In the remainder of her testimony at trial the witness was able to recount the circumstances of the offense. Her stated motive for going to defendant's apartment was corroborated by her mother. Officer Cena's testimony corroborated her assertion that the bed had broken during the ordeal and both the officer and the mother stated that the prosecutrix's clothes were torn.

■■ It is only where there has been an abuse of discretion or a manifest misapprehension of some legal principle that the trial court's determination of testimonial competency will be reviewed (*People v. Davis* (1957), 10 Ill.2d 430, 437, 140 N.E.2d 675; *People v. Hall* (1971), 1 Ill. App.3d 949, 960, 275 N.E.2d 196). We find from the record no reason to disturb the trial court's determination.

### III.

Defendant next maintains that the trial court's consideration of incompetent hearsay testimony warrants reversal.

Upon the State resting its case in chief, counsel for the defendant

made a motion for directed verdict. The defendant asserted that the prosecutrix only testified that defendant and Earl had intercourse with her while she was being held by her arms on the bed. During the ensuing colloquy the court inquired if the mother took the prosecutrix to the hospital. The record then indicated the mother, recalled by the State, testified, without objection, that her daughter was taken to Billings Hospital for an examination.

Thereafter, Officer Cena was recalled. The record does indicate an "objection" by defense counsel which was neither specific, or ruled upon by the court. Thereupon, the State proceeded to ask questions of Cena as did defense counsel. Referring to the report of the doctor who examined the prosecutrix, Officer Cena testified that the doctor "stated there was penetration, the hymen was busted before." Defense counsel elicited from the witness further hearsay testimony as to the contents of the doctor's report, *i.e.*, that the doctor found no sperm and that the prosecutrix was not a virgin prior to the date of the offense. It was not until the State attempted to ask one last question of the officer that defense counsel made a general objection to the officer's testimony. No motion to strike the testimony was made.[2]

Objections to testimony should point out the basis for the objection and be timely made. Failure to do so or to make specific motions to strike generally constitute a waiver of any error. Specific objections of this type cannot be raised on appeal for the first time. See *People v. Trefonas* (1956), 9 Ill.2d 92, 98, 136 N.E.2d 817; *People v. Davis* (1st Dist. 1970), 126 Ill.App.2d 114, 116-117, 261 N.E.2d 428.

Defense counsel's pursuit of further hearsay testimony from the same witness precludes him from raising that matter on appeal. *People v. Calvin* (1969), 116 Ill.App.2d 471, 481, 253 N.E.2d 922; *People v. Lewis* (1973), 15 Ill.App.3d 8, 304 N.E.2d 63.

## IV.

Defendant also complains that the trial court erroneously permitted Officer Cena to state his opinion as to the nature of the odor he detected in defendant's apartment since, he maintains, "* * * the State failed to qualify the officer, either as an expert or non-expert."

In support of his position defendant cites two cases wherein a witness was called upon to give his lay opinion as to the testamentary capacity of the testator which, in turn, was the ultimate issue to be determined. In the instant case the defendant was charged with contributing to the sexual delinquency of a child in that he "performed an act of sexual

---

[2] Defendant's post-trial motion for acquittal, etc., did not specify this as error.

intercourse with the victim." There is no charge that he contributed to the delinquency of a child by offering her marijuana. Consequently the question of whether or not marijuana had been smoked in defendant's apartment was not the ultimate issue in the case and, as the State aptly points out, the only probative impact of the officer's testimony lies in its corroboration of the prosecutrix's testimony that those present in defendant's apartment were smoking "reefers."

■■ Although Officer Cena had no technical training, he had worked in the narcotics section for 3½ years, handled nearly 150 cases, had smelled narcotics, and, based upon this experience, stated that he associated the odor in defendant's apartment with marijuana. Defendant suggests that these facts did not supply a sufficient foundation for the officer's opinion but, on the contrary, our courts have recognized the relevance and admissibility of such an opinion once a witness has testified, to the satisfaction of the court, that he is familiar with and can recognize a particular odor. See *People v. Reed* (1928), 333 Ill. 397, 401, 164 N.E. 847; *People v. Erb* (2d Dist. 1970), 128 Ill.App.2d 126, 132, 261 N.E.2d 431; *People v. Laird* (5th Dist. 1973), 11 Ill.App.3d 414, 415, 296 N.E.2d 864.

Defendant asserts that the trial court, in finding the defendant guilty, referred to the officer's testimony that he detected by the sense of smell that marijuana had been smoked in defendant's apartment. Our reading of the entire statement by the trial court indicates that this testimony was noted as one of the points testified to by the prosecutrix which was corroborated by the testimony of the police officer. However, that fact received no greater importance than the other points of corroboration noted by the trial court.

We find no error in the testimony of Officer Cena as to the condition of defendant's apartment noted by the officer at the time he was in the apartment.

### V.

Defendant strongly urges that the evidence presented by the State was not sufficient to support a finding of guilty since the prosecutrix never specifically stated that defendant engaged in an act of sexual intercourse; that she could not remember the exact time of the offense; that she could not recall the specific floor where defendant's apartment was located; that the trial court relied in part on hearsay testimony; that no sperm was found; and that the testimony of the State's witnesses was, in general, confusing.

Defendant correctly points out that the prosecutrix, when testifying about the acts of intercourse, did not use the word "sexual," and there

was no actual testimony by her concerning penetration. He points out that under section 11—1(b) of chapter 38, "sexual intercourse occurs when there is any penetration of the female sex organ by the male sex organ"; that to prove an act of contributing to the sexual delinquency of a child, as charged in the complaint, the State must prove (i) that defendant was over 14 years of age, (ii) that the prosecutrix was under the age of 18, and (iii) that there was an act of sexual intercourse.

Defendant relies principally on the case of *People v. Bryant* (1970), 123 Ill.App.2d 35, 259 N.E.2d 638. There this court reversed the defendant's conviction for contributing to the sexual delinquency of a minor since the testimony of the complaining witness was not only unsatisfactory but also uncorroborated. She failed to explain her presence, in violation of the curfew, in the area of the offense. She did not adequately explain her failure to return home until the following day as well as her failure to mention the incident to her mother until three days later. Further, a friend of the complaining witness, present during the occurrence, was not called to testify. On the other hand, defendant strongly denied guilt and offered the corroborative testimony of an eyewitness. This court then concluded that, by comparison, the evidence presented by the State was insufficient to support the finding of guilty.

The quality and quantity of the testimony offered by the State's witnesses in the case at bar sufficiently distinguishes it from *Bryant*. Here the prosecutrix stated that she went to defendant's apartment seeking her girl friend; that the occupants of the apartment were drinking and smoking "reefers"; that two men overcame her, and pulled her clothes off; that each man (one of whom was the defendant) took turns having intercourse with her while the other held her; that the bed broke during the ordeal; and that the attack took place on the second or third floor of the building on a school night. She explained further that her friend, Cookie, had run away from home since the time of the offense and could not be found by the police.

Elements of her story were corroborated by Officer Cena's testimony that he smelled the odor of marijuana in defendant's apartment; that the bed was broken; that clothes were on the floor and bed sheets all around; and that, when he saw the prosecutrix on the stairway a short time later, her clothes were torn, she was crying, and holding her back. The mother's testimony corroborated her daughter's motive for going to defendant's apartment, and she also testified that her daughter's clothes had been torn and that she was bruised and hollering.

By comparison, the defendant not only denied having had any sexual relations with the prosecutrix but also denied that she had been in his apartment.

Defendant points out that the word "intercourse" as defined in Black's Law Dictionary (4th ed.) refers to communication, "a running or passing between persons or places: commerce."

We have reviewed the entire record with the caution required in this type of case (*People v. Pointer* (1st Dist. 1972), 6 Ill.App.3d 113, 285 N.E.2d 171). From the context of the prosecutrix's testimony, we do not think there can be any doubt that the prosecutrix testified about an act of sexual intercourse committed by the defendant. After she had testified that defendant had held her while Earl "had intercourse," her testimony as to defendant was that Earl had then held her "while Jenkins did it." In context, it is absurd to conclude that all she was testifying to was that first Earl and then defendant were merely socially conversing with her.

██ Thus, unlike the circumstances in *Bryant*, the prosecutrix's testimony in this case presented a clear and convincing description of events, all of which established defendant's guilt beyond a reasonable doubt. As we have noted, significant aspects of prosecutrix's testimony were corroborated by other of the State's witnesses. Discrepancies pointed out by the defendant are not sufficient to create a reasonable doubt of his guilt. In light of defendant's complete denial of the change and, indeed, his denial that the prosecutrix had even entered his apartment, the testimony presented a question of the witnesses' credibility rather than sufficiency of the evidence of convict. Since it is well-established that the credibility of the witnesses is a matter best left to the determination of the trial court (*People v. Novotny* (1968), 41 Ill.2d 401, 412, 244 N.E. 2d 182), our review of the entire record does not disclose any reason to reverse its finding.

For these reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

HAYES, P. J., and LEIGHTON, J., concur.