THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MELVIN HAYWOOD, Defendant-Appellant.

First District (1st Division)   No. 76-64

Opinion filed May 8, 1978.

Sam Adam, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Myra J. Brown, and William G. Pileggi, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

The defendant, Melvin Haywood, was indicted for three counts of murder against Lee Jackson, William Troop and Melba Grate and for one count of attempt murder and one count of aggravated battery against Charles Stanton. Prior to trial, the defendant made two separate motions. The first of these motions sought to suppress the use of the preliminary hearing testimony of a witness who had died prior to trial. The second pretrial motion sought to suppress an in-court identification of the defendant made at the preliminary hearing. The trial court denied both of the above motions and the case proceeded to trial before a jury which returned verdicts of guilty. The trial court entered judgments on the verdicts and sentenced the defendant to concurrent sentences of 100 to 200 years on each count of murder and to 10 to 20 years on the count of attempt murder. The defendant now appeals from the above judgments.

On appeal defendant contends (1) that he was not afforded an adequate opportunity to cross-examine a witness who identified him at a preliminary hearing and who died prior to trial, and that the introduction of this testimony at trial deprived him of his right to due process of law; (2) that a witness' identification of the defendant at the preliminary hearing was so unnecessarily suggestive and conducive to irreparable mistaken identity as to deny the defendant due process of law; (3) that the trial court committed reversible error by prohibiting the defendant from both questioning police officers and placing before the jury evidence of other faulty identifications made by the victim; and (4) that the admission into evidence of testimony of out-of-court identifications offered to bolster the reading of a transcript of preliminary hearing testimony was prejudicial error requiring reversal of the instant conviction.

We affirm.

The first witness called by the State to testify at the defendant's trial was Officer William Hinton who indicated that on July 2, 1972, he received a radio assignment and proceeded to 1448 East 68th Street in Chicago. Upon arriving at that address, Officer Hinton encountered Charles Stanton lying outside the building and suffering from a gunshot wound to the chest. After talking to Stanton, Officer Hinton proceeded to a third-floor apartment where he observed three men and a woman lying

on the floor in pools of blood. Three of these people, Lee Jackson, Melba Grate, and William Troop, later died from gunshot wounds to the head. The fourth, Harry Daniels, had been shot in the leg and survived to testify for the defense in the instant trial.

Also testifying for the State was Officer Davis who visited the scene and then proceeded to Jackson Park Hospital where he spoke to Charles Stanton shortly after the incident. On cross-examination, Officer Davis testified that at the hospital Stanton told him that he and Melba Grate were in a rear bedroom of the third-story apartment when he observed Lee Jackson enter the living room with four black males. Stanton indicated to Officer Davis that he had seen the four men before and that they were from Indiana. One of the men yelled "Now" and the four men started shooting. During the interview, Stanton was asked to describe the men but was interrupted by the treating physician who was preparing him for surgery.

The next witness to testify for the State was Officer Thomas McKenna who testified that he and his partner conducted a brief interview with Charles Stanton at Jackson Park Hospital and that pursuant to that interview proceeded back to the scene to recover additional evidence. After seizing a number of photographs at the apartment, Officer McKenna and his partner returned to the hospital and showed the photographs individually to Stanton. Stanton marked four of the photographs with an "X." Officer McKenna identified the defendant as the person depicted in each of the photographs Stanton had marked.

On cross-examination, Officer McKenna testified that Stanton told him one of the four people from Indiana jumped up, yelled "Now," and that the people from Indiana then began shooting. Stanton informed Officer McKenna that when the shooting began he fled to the bedroom, was ordered to get up from behind the bed, and was then shot. Stanton also described the man who actually shot him as short and stocky and indicated that he had seen photos of at least one of his assailants at Lee Jackson's apartment. On redirect examination, Officer McKenna stated that Stanton pointed to the defendant in the polaroid photograph as the man who shot him at least once when he was in the bedroom.

Over defense counsel's objections, the prosecution then read the transcript of the testimony of Charles Stanton given at a preliminary hearing. Stanton, who had died prior to trial, testified at the preliminary hearing that he, Melba Grate, Shirley Scott, William Troop and Lee Jackson, were at Jackson's apartment when the defendant and "two other fellows" arrived between 2 a.m. and 2:30 a.m. Somebody yelled "Now" and shooting began. Stanton testified that the defendant got up from the couch and shot him in the arm. Stanton then ran toward the back

bedroom where he hid Shirley Scott in the closet and himself under the bed. Stanton looked into the hall and saw the defendant shoot Melba Grate in the head. The defendant then entered the bedroom, ordered Stanton to stand up, and shot him in the stomach. After hearing additional shots, Stanton staggered into the living room where he observed Melba Grate, Lee Jackson and William Troop with bullet wounds in the head. At the preliminary hearing, Stanton then made an in-court identification of the defendant as the person who shot Melba Grate and himself.

After Stanton's cross-examination testimony at the preliminary hearing was read at trial, the prosecution called Officer John Janda as a witness. Officer Janda testified that on July 2, 1972, he received an assignment and proceeded to St. Bernard's Hospital where he interviewed the defendant. Officer Janda observed lacerations on the left side of defendant's head and a bullet wound in his right leg. The defendant told Officer Janda that as he was walking near 70th and Sangamon Streets in Chicago, someone came up from behind him and shot him twice in the leg.

The next witness called by the State was Officer Grundard who had a conversation with the defendant shortly after his arrest almost two years after the incident. Officer Grundard testified that after advising the defendant of his rights, he told the defendant that he knew the defendant was in Lee Jackson's apartment and wounded during a shootout. After the defendant denied that he was in Lee Jackson's apartment and indicated that there was a police report on file regarding how he was wounded, Officer Grundard told the defendant that he had been in Lee Jackson's apartment with two persons named Lee Clark and Larry Hooper who were also involved in the shootout. The defendant then admitted to Officer Grundard that he was in Lee Jackson's apartment and was shot in the leg and head, but denied that Clark and Hooper were with him. The defendant explained to Officer Grundard that he was in Jackson's apartment visiting when several males entered the apartment, pulled guns and began shooting. The defendant was wounded and fled the apartment. Officer Grundard also testified that when the defendant was shown a photograph of Shirley Scott, Lee Jackson's wife, he stated "That is Lee Stone's old lady, if I told you where she was, I would be hanging myself." The defendant concluded his conversation with Officer Janda by indicating that he was not a "stoolie" and that he wanted to see a lawyer.

The first witness to testify for the defense was Harry Daniels, who stated that on the night of the shooting he arrived at 1448 East 68th Street alone. Present in the apartment were Lee Jackson, Jackson's wife, "Mose" (Jackson's brother), Melba Grate, and Charles Stanton. Stanton, "Mose", and Lee Jackson were "snorting" heroin, drinking, and smoking marijuana in the bedroom. Daniels admitted on cross-examination that he

himself "snorted" cocaine and had become "high" that evening. Daniels testified that Stanton "was mostly out of it" and fell asleep on his girl friend's lap.

Daniels went on to testify that he heard Jackson make a telephone call and tell someone "to bring in a couple of spoons of heroin." Shortly thereafter, three men came into the apartment. One of the men went into the back of the apartment, one remained at the door, and the third sat down on the couch. Minutes later, Daniels heard shots coming from the back room. At that point, the man sitting on the couch started shooting. Daniels was shot in the leg, fell to the floor, and never saw his assailants again. Daniels also testified that Charles Stanton had identified him as one of the assailants, that he was arrested and charged, but never brought to trial.

Also called as a witness for the defense was the court reporter who had recorded the testimony of Charles Stanton during the trial of Willie Bedgood, also indicted for murder in the same shooting. The court reporter's testimony revealed that during Bedgood's trial Stanton testified that he had been in the apartment for approximately two hours before the shooting took place; that there were several lights in the living room but they were not working; and that there was a light on in the fish bowl and a "picture on the wall" with approximately 50 station lights surrounding it.

After the defense rested its case, the State called Officers Williams, Davis, and Fery as rebuttal witnesses. Officer Williams stated that when he first arrived at the scene he did not notice the smell of liquor on Stanton's breath. Officer Davis testified that he interviewed Daniels at the scene and that Daniels never stated that he saw three men shooting and instead indicated that he heard one man run from the apartment after the incident. The last rebuttal witness, Officer Fery, testified that he interviewed Daniels at the hospital and that Daniels stated that he was sitting in the apartment with his eyes closed and that he knew nothing of the incident.

The defendant first contends that he was not afforded an adequate opportunity to cross-examine Stanton at the preliminary hearing and that the introduction of Stanton's testimony at the later trial deprived him of his due process right to confront and cross-examine witnesses testifying against him.

■■ ■ The transcript of testimony given at a preliminary hearing is admissible into evidence at a later trial only if the witness is presently unavailable and an adequate opportunity to cross-examine the witness was provided at the earlier proceeding. (*People v. Horton* (1976), 65 Ill. 2d 413, 358 N.E.2d 1121; *People v. Beathea* (1974), 24 Ill. App. 3d 460, 321 N.E.2d 458.) An "[a]dequate opportunity to cross-examine means an opportunity to effectively cross-examine, and merely providing an

opportunity to cross-examine at the preliminary hearing is not *per se* adequate opportunity." (*People v. Horton* (1976), 65 Ill. 2d 413, 417, 358 N.E.2d 1121, 1124.) In support of his contention that he was denied the opportunity to effectively cross-examine Stanton at the preliminary hearing, the defendant notes that at that hearing the trial court sustained many of the State's objections to questions asked Stanton on cross-examination due to the fact that the questions involved discovery and were thus outside the scope of the preliminary hearing. Defendant notes that the trial court sustained objections by the State to specific questions concerning the following: whether Stanton had seen a picture of the defendant since the incident; whether Stanton had testified in any other proceedings arising out of the incident; whether he described his assailant to the police; what he told the police outside the apartment immediately after the incident; and the details of any description he gave the police. The defendant concludes that the cumulative result of his failure to explore the above areas is that he was unable to truly test Stanton's identification of the defendant.

■■ ■ While the record does reflect that the trial court sustained numerous objections to questions asked Stanton on cross-examination at the preliminary hearing, we do not believe this compels the conclusion that counsel could not effectively test Stanton's identification and was thus denied the opportunity to effectively cross-examine Stanton. A review of Stanton's cross-examination testimony in its entirety reveals that defense counsel did elicit testimony from Stanton concerning his photographic identification of the defendant. On cross-examination Stanton indicated that he had seen a picture of the defendant in Lee Jackson's bedroom, that the police brought this picture and other pictures to the hospital, and that Stanton identified the defendant in these pictures. We furthermore fail to see any prejudice caused the defendant by his inability to explore any identification of the assailants Stanton may have given the police. The only police officer to testify that Stanton gave a description of his assailant was Officer McKenna who indicated that Stanton described one of his assailants as short and stocky. The PSI investigation report reflects that the defendant is 5 feet, 6 inches tall and weighs 180 pounds. Officer Davis indicated that Stanton was taken to the operating room before he could give a description of his assailants. Similarly, we believe that the defendant's inability to explore the fact that Stanton testified in other proceedings was of no prejudice to the defendant. The record reflects that defense counsel was not prepared to impeach Stanton's preliminary hearing testimony because he was not in possession of a transcript of Stanton's testimony given at Bedgood's trial. Moreover, defense counsel sought to introduce into evidence at trial the fact that Stanton had testified at Bedgood's trial and that Bedgood's trial resulted in an

acquittal. The trial court, for reasons discussed later properly sustained the State's objection to the question concerning the results of Bedgood's trial.

Furthermore, Stanton's cross-examination testimony at the preliminary hearing consisted of 17 pages in the transcript and went well beyond the scope of direct examination. During cross-examination Stanton described the other participants in the murder, the condition of the premises, and photographs of the defendant—all areas unexplored during direct examination.

■■ ■ Implicit in defendant's argument is the contention that it is impossible to effectively cross-examine a witness at a preliminary hearing due to the inability to secure discovery material until after the preliminary hearing as provided in Supreme Court Rule 411. (Ill. Rev. Stat. 1975, ch. 110A, par. 411.) We addressed ourselves to this contention as follows in *People v. Tennant* (1975), 32 Ill. App. 3d 1034, 1040, 337 N.E.2d 322, 327, *aff'd* (1976), 65 Ill. 2d 401, 358 N.E.2d 1116:

> "If this contention were accepted, testimony of a witness who died after the preliminary hearing could never be used. It seems more logical and reasonable to permit the use of this testimony provided that there was no significant limitation upon the free exercise of the right to cross-examine by counsel."

In the instant case we find no significant limitation upon the free exercise of the rights to cross-examine and conclude the defendant was afforded an opportunity to effectively cross-examine Stanton.

Defendant next argues that Stanton's identification of him at the preliminary hearing was so unnecessarily suggestive and conducive to irreparable mistaken identity that it denied him due process of law. The defendant notes that Stanton identified him while he was the only black male seated at counsel's table and contends that this procedure was not only suggestive but unnecessary as well. Defendant notes that he was in custody for over a month before the preliminary hearing and contends that a lineup should have been held.

■■ We initially note that an in-court identification of an accused without a prior lineup does not constitute a denial of due process. (*People ex rel. Blassick v. Callahan* (1972), 50 Ill. 2d 330, 279 N.E.2d 1.) While perhaps it would have been better for the State to have conducted a lineup prior to the preliminary hearing, the failure to do so was not violative of defendant's due process rights.

■■■ We furthermore reject defendant's contention that the trial court erred in allowing into evidence the fact that Stanton identified him at the preliminary hearing. Although the practice of showing suspects singly to persons for the purpose of identification has been widely condemned (*Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967),

single suspect identifications have been held justified when it was apparent that the witness had an excellent opportunity to observe the defendant during the commission of a crime. (*People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208.) We believe that in the instant case Stanton had an excellent opportunity to view the defendant during the commission of the crimes for which defendant was charged. Although it is true that Stanton's testimony at the preliminary hearing that numerous lights illuminated the apartment was contradicted somewhat by his testimony at Willie Bedgood's trial that the only lights illuminating the living room were 50 tiny Italian lights surrounding a picture and a light under a fish tank, there is no indication that the lighting conditions were not sufficient to enable Stanton to clearly view his assailant. Moreover, although Daniels testified that Stanton had ingested both drugs and alcohol prior to the incident, Officer Williams testified he smelled no alcohol on Stanton's breath when he encountered him shortly after the incident. A review of Stanton's testimony indicates that he observed the defendant enter the apartment, get up from the couch, draw a gun, and shoot him in the arm. Stanton again saw the defendant in the bedroom where he shot Melba Grate and again shot Stanton. Moreover, Stanton made a photographic identification of the defendant shortly after the incident and had seen defendant's picture on Lee Jackson's dresser the night before the incident. The record reflects that Stanton did indeed have an excellent opportunity to view the defendant during the commission of the instant crimes and the trial court did not err in allowing into evidence Stanton's identification of the defendant at the preliminary hearing.

The defendant further contends that the trial court committed reversible error in prohibiting defense counsel from questioning police officers concerning the results of proceedings instituted against two other individuals identified by Stanton. The facts giving rise to this contention arose during the testimony of Officer McKenna who stated that he showed Stanton a group of photographs while Stanton was in the hospital and that Stanton identified Harry Daniels and Willie Bedgood from the photographs as two of the assailants the night of the incident. Defense counsel then asked Officer McKenna whether warrants were placed on Daniels and Bedgood and the results of charges, if any, placed against the two. Objections by the State to the latter two questions were sustained by the trial court. In chambers, the defendant then made an offer of proof indicating that murder charges against Daniels were dropped by the State and that the trial of Willie Bedgood for murder resulted in an acquittal by the jury.

■■ The latitude to be allowed on cross-examination rests largely within the discretion of the trial court and it is only in cases where there is

a clear abuse of this discretion that a reviewing court will interfere. (*People v. Gallo* (1973), 54 Ill. 2d 343, 297 N.E.2d 569.) We see no abuse of discretion in the instant case. As indicated by the State, the arrest of another, has no relevance to defendant's guilt. (*People v. Tillman* (1969), 116 Ill. App. 2d 24, 253 N.E.2d 873.) The fact that Daniels was arrested but never indicted or brought to trial could have been the result of any one of a number of plausible reasons other than a faulty identification by Stanton. The introduction of this evidence could have confused or misled the jury and led to improper speculation on their part. Moreover, the fact that Daniels was arrested but never tried was in fact introduced into evidence by Daniels' own testimony. Daniels testified that Stanton had identified him as one of the assailants, that he was arrested and charged with these murders, but never brought to trial.

■■ For similar reasons, we see no abuse of discretion in the trial court's ruling sustaining the objection to the question concerning the results of Bedgood's trial. While it is true that during Bedgood's trial, Stanton identified Bedgood as one of his assailants, there is nothing in the instant record concerning the evidence presented at Bedgood's trial. Even if we were privy to that evidence, it is most probable that Bedgood's acquittal could have been based on any one of a number of factors other than erroneous identification by Stanton. Under such circumstances, the jury again could have been invited into an area of conjecture and speculation and the trial court, in its discretion, properly sustained the objection.

The defendant finally contends that the trial court committed reversible error in allowing into evidence testimony of Officer McKenna concerning Stanton's out-of-court photographic identification of the defendant. At trial, Officer McKenna testified that he and his partner conducted two brief interviews with Stanton in the hospital and then proceeded back to the scene of the murders where they recovered approximately 120 photographs. They returned to the hospital, showed Stanton the photographs, and asked him to mark the back of any photograph depicting any of his assailants. Stanton marked with an "X" the backside of four of the photographs. Over the general objection of defense counsel, Officer McKenna testified that the person depicted in each of the photographs identified by Stanton was the defendant.

The trial court did not err in allowing the above testimony into evidence because defense counsel specifically waived any objection to Officer McKenna's testimony concerning Stanton's photographic identification. The instant record indicates that immediately after Officer McKenna testified that he brought the photographs to Stanton in the hospital, defense counsel requested a sidebar conference during which defense counsel stated the following:

"Judge, Your Honor will note that all of this testimony about

going—having a conversation, then going to the apartment and looking particularly for a photograph and then bringing the photograph back and he is about to tell what he did about the photograph.

Your Honor will note all of this is outside of the presence of the defendant.

It involves conversations and so forth with Stanton but Your Honor will note it is coming in without objection, which is done so long as the record notes not objecting to it, but we, of course, have a right to cross-examine about it."

After Officer McKenna's testimony the jury retired from the courtroom and defense counsel reiterated his belief that the admission into evidence of McKenna's testimony that Stanton picked out the photograph of the defendant as that of the person who shot him would be reversible error if an objection was raised. However, referring to the above testimony of McKenna, defense counsel stated:

"* * *No question that that is hearsay, but it came in now without objection by the defendant, but the record should be clear that we didn't object because we want to extensively cross-examine McKenna about his conversation in the hospital with Stanton, so as long as, I don't want to hear on Monday about all of these objections about the conversation. They have opened the door, Judge, and just so we don't come back Monday and try to rehash what happened on Friday. The door had been opened about his conversation with Stanton and I want to go right on through the door."

■■■■ Failure to make a timely objection and to point out the specific basis for the objection or a failure to make a specific motion to strike such testimony generally constitutes waiver of any error. (*People v. Jenkins* (1974), 20 Ill. App. 3d 727, 315 N.E.2d 269.) Ordinarily, a party who fails to object to the admission of evidence waives the right to question its admissibility. (*People v. Erb* (1970), 128 Ill. App. 2d 126, 261 N.E.2d 431.) Moreover, a defendant who agrees to the admission of certain evidence and who then fails to move that objectionable parts thereof be stricken waives any error concerning its admission. (*People v. Arnold* (1963), 27 Ill. 2d 294, 189 N.E.2d 241.) In the instant case we believe that defense counsel, for ample tactical reasons, agreed to the line of questioning the State pursued during the direct examination of Officer McKenna. Although defense counsel did interpose a general objection when Officer McKenna was asked whom Stanton identified in the photographs, any doubt about defense counsel's true intention was removed by his statement mentioning "opening the door" after Officer McKenna's testimony during direct examination.

■■ We further note that defense counsel conducted a vigorous and capable cross-examination of Officer McKenna and that during cross-examination defense counsel elicited testimony from Officer McKenna that Stanton also identified photographs of Harry Daniels and Willie Bedgood. Thus, even if we assume defense counsel did not waive his right to object to the introduction into evidence of Officer McKenna's testimony concerning Stanton's photographic identification of the defendant, defense counsel elicited further hearsay testimony from the same witness. Such cross-examination precludes defendant from raising such an objection on appeal. *People v. Jenkins* (1974), 20 Ill. App. 3d 727, 315 N.E.2d 269.

For the foregoing reasons defendant's convictions are affirmed.

Judgments affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.