THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY BOHN, Defendant-Appellant.

Second District   No. 2—04—1252

Opinion filed December 14, 2005.

Patrick A. Tuite and Patrick J. Cotter, both of Arnstein & Lehr, L.L.P., of Chicago, for appellant.

John A. Barsanti, State's Attorney, of St. Charles (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Kristine A. Karlin, of Mt. Prospect, for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Gary Bohn, was convicted by a jury of unlawful possession of a controlled substance (15 grams or more but less than 100 grams of a substance containing cocaine) (720 ILCS 570/402(a)(2)(A) (West 2002)), unlawful possession of a controlled substance (15 or more but less than 200 pills containing 3,4 MDMA) (720 ILCS 570/402(a)(7.5)(A)(ii) (West 2002)), unlawful possession of cannabis (720 ILCS 550/4(d) (West 2002)), and unlawful possession of a firearm without a firearm owner's identification (FOID) card (430 ILCS 65/2(a)(1) (West 2002)) and was subsequently sentenced to a term of probation and a term in the county jail. Defendant now appeals from his convictions. We affirm.

On April 17, 2002, officers of the North Central Narcotics Task Force executed a search warrant at 16N630 Oaks Lane in West Dundee. Officers seized a bag of cocaine, a bag of cannabis, a number of pills, and various items of drug paraphernalia that had traces of either cocaine or cannabis on them. Proof of ownership in the form of a checkbook showed that defendant, who was the only person in the home when the warrant was executed, owned the premises, and he was taken into custody at that time.

While the search warrant was being executed, a car approached the house, slowed down, made a U-turn, and headed away. Officers eventually stopped the car and questioned the occupants, Chance Lange and Jeff Meyer. Lange told officers that he lived in defendant's house. Lange was then arrested on an outstanding warrant. He was not charged with any crime at that time.

The case eventually went to trial before a jury. Officer Leo Monroy testified that he was the first officer to enter defendant's house after officers battered in the front door. He saw defendant walking out of a room referred to as the library and told him to stop and get down. Defendant looked back into the library, then obeyed. When asked if he was "expecting trouble," defendant responded, "I knew this was going to happen." Officer Monroy noticed a strong odor of burnt cannabis in

the library and discovered cannabis, cocaine, pills, and various drug paraphernalia and items with cocaine or cannabis residue in the library. Many of these items were found out in the open, on top of a large cigar humidor or on bookshelves. A small vial containing white powder was found either in defendant's pants pocket or the library, and a pipe with cannabis residue was found on top of a television set in the family room. Defendant's checkbook and a letter addressed to him were also found in the library. At some point, Monroy learned that Lange also lived in the house, but Monroy could not remember the nature of the indicia. When asked by defense counsel, "If Lange was home, he would be sitting here?", Monroy responded, "Along with him [defendant], sir, yes."

Lange testified during defendant's case that he was defendant's personal trainer and had lived in defendant's home for about one year at the time of the execution of the search warrant. Lange testified that parties were occasionally held in the house and that alcohol and drugs, including marijuana, cocaine, and Ecstasy, were used. Lange, his girlfriend, Tia Jordan, and defendant all partook of drugs at those parties. Jordan also lived with Lange at defendant's house, but defendant kicked her out around April 12 after she overdosed on drugs.

Lange testified that defendant was not staying overnight at the house in early- to mid-April 2002. Lange brought Jordan back to stay with him starting about four days before the search warrant was executed. Jordan brought drugs that they stored in Lange's bedroom. On April 17, he and Jordan were "doing drugs" in the family room of defendant's house. They put the drugs in the library because it was more convenient. They left the house after 3 p.m. and went to the home of Jeff Meyer. At about 6:30, Lange and Meyer were headed to defendant's house to retrieve the drugs from the house when Meyer saw a police car in the driveway of the house. They were pulled over after they pulled a U-turn and sped away. Lange told officers about the parties and drug use that had gone on in the house.

Lange then testified that, in March 2004, he flew from Florida to Chicago, at defendant's expense, to meet with defendant's attorney. He stated that his conscience told him that he "should come forward. They were my drugs." Lange was aware that he could be charged criminally if the drugs were his. Defendant also paid for Lange's travel and housing expenses related to testifying at the trial. However, when asked whose drugs were in the house on April 17, he replied that "[t]hose were Tia's."

On cross-examination, Lange stated that he and Jordan kept their personal belongings in his bedroom. Defendant kept personal items, furniture, cigars, books, and a computer in the library. When Lange

was at the police station after Meyer's car was stopped, he did not tell the police that the drugs in the house belonged to him or to Jordan. Although he lived with defendant for a year, he told the police that he "occasionally" stayed at defendant's house. He also told the officers that he was aware that there was cocaine, marijuana, and Ecstacy in defendant's house. However, he did not tell the police that the drugs found in defendant's house belonged to Jordan or that he was going to the house to retrieve those drugs. He saw Jordan get marijuana from the library on April 17 and also saw her use a scale and a grinder located in the library.

Defendant testified that, in early April 2002, he spent most of his nights at the home of his girlfriend, Victoria Nations. He would occasionally go to his own house during the week to pick up clothes and check the mail, and he stayed at his house on weekends. He spent the night of April 16 at Nations' house. On April 17, he stopped by his house after work to drop off some of Nations' possessions. No one else was in the house when he arrived, but he could smell the odor of burnt cannabis. He was sitting on the couch, talking to his ex-wife on the telephone, when the police arrived. He had not entered the library since he arrived at the house on April 17, and he did not know that there were any drugs in the library. He was handcuffed and detained in the family room. He did not possess any drugs on April 17.

Defendant was aware that people used drugs at parties held in his house, and he occasionally used drugs himself. Sometimes Jordan brought drugs, other times other people brought them. He had seen both Lange and Jordan using drugs and giving drugs to other people in his house. When asked if he would know if drugs were sitting out in plain view on the cigar humidor in his library, defendant responded, "Not unless I walked into that room."

The testimony of other witnesses is omitted for purposes of this disposition.

After Lange testified, he was apparently arrested outside the courtroom. The record contains a one-count complaint, dated September 14, 2004, charging Lange with possession with intent to deliver 15 grams or more, but less than 100 grams, of a substance containing cocaine, the violation occurring on April 17, 2002, the same date as the execution of the search warrant. Defendant told the trial court of Lange's arrest and said:

> "I'd like to introduce that evidence on behalf of the Defendant as indicating that the party opponent in this case, being the State, believed his [Lange's] testimony to such an extent that he's been charged, I take it, with possession of these drugs; and I think the Jury ought to know that."

The State objected, calling such information irrelevant, prejudicial, and confusing. The State also argued that more than one person can possess drugs and that multiple people were involved in the possession of the drugs at issue. The State then argued:

"By Chance Lange's testimony, at least two people possessed the drugs. To say that he was arrested and then to say that that means we believe; that is, the State in this prosecution of this Defendant believed Chance Lange is absolutely and positively ridiculous. I don't believe Chance Lange at all, and I'm going to argue that I don't believe him."

The court then ruled:

"I think the bottom line is when you look at this kind of evidence, it legally doesn't add anything to who or what this Defendant did [*sic*]. What Mr. Powers [assistant State's Attorney] or another State's Attorney may believe in terms of who should be arrested is not relevant to this proceeding. I don't see an appropriate basis to allow that evidence in, so I won't."

After the jury returned its verdicts, defendant filed a motion for arrest of judgment or, in the alternative, for a new trial. Defendant alleged, among other things:

"[T]he court erred in not allowing the defense to inform the jury that the State, through its agents, had Chance Lange arrested for possession of the same drugs involved in this case once he left the witness stand, which was inconsistent with their [*sic*] position that he was not telling the truth when he stated that the drugs found in the home in question were his and not the defendant's. (See attached complaint[.])

While such testimony may have also established joint possession, the defense was, nonetheless, entitled to show the jury that the State thought enough of Mr. Lange's testimony to cause him to be arrested \*\*\*."

The trial court denied the motion, and this appeal followed.

Defendant now contends that the trial court erred in denying his request that the jury be informed that Lange was arrested for possession of the same drugs that defendant was accused of possessing. Evidentiary questions are left to the sound discretion of the trial court, and this court will not reverse a decision on such a question unless the trial court abuses that discretion. *People v. Cruz*, 162 Ill. 2d 314, 331 (1994).

Defendant initially argues that "Lange's testimony and all the factors surrounding his testimony should have been considered by the jury to determined [*sic*] whether he and he alone possessed the drugs that were involved in this case or whether he along with Gary Bohn possessed the drugs." We disagree.

■ While a defendant has the right to present a defense, a trial court has broad discretion in ruling on evidence sought to be excluded as irrelevant. *People v. Hayes*, 353 Ill. App. 3d 578, 583 (2004). In assessing a trial court's exercise of such discretion, this court must determine whether the proffered testimony would have made the question of the defendant's guilt of the charged offense more or less probable. *Hayes*, 353 Ill. App. 3d at 583.

■ Here, the jury heard Lange's contradictory testimony about the ownership of the drugs—he stated both that they belonged to him and that they belonged to Tia Jordan. However, whether Lange or Jordan was ever charged with possession of the drugs does not make the question of *defendant's* guilt more or less probable. Possession of the drugs by Lange, Jordan, or both would not rule out possession by defendant, as possession may be joint. See *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000) ("if two or more persons share immediate and exclusive control or share the intention and power to exercise control, then each has possession"). Whether the State believed Lange's testimony to the extent that it decided to charge him with possession of the same drugs would not make the question of defendant's guilt more or less probable. The determinations of the weight to be given to a witness's testimony, his credibility, and the reasonable inferences to be drawn from the evidence are the responsibility of the fact finder. *People v. Moser*, 356 Ill. App. 3d 900, 910 (2005). Even if the State *did* believe Lange, it is the jury's determination of credibility, not that of the State, that is paramount.

Furthermore, evidence of arrest does not possess the indicia of reliability required for admission as evidence. For impeachment purposes, evidence of arrests, indictments, charges, or the actual commission of a crime is not admissible; only actual convictions may be used. *Moser*, 356 Ill. App. 3d at 912-13. The arrest of another has no more relevance to a defendant's innocence than his indictment has to a defendant's guilt. *People v. Tillman*, 116 Ill. App. 2d 24, 38-39 (1969). Evidence of Lange's arrest, whether it occurred when the house was searched in 2002 or during trial in 2004, was neither reliable nor relevant to a determination of defendant's guilt.

Defendant argues that Lange's arrest is relevant "in light of the fact that the prosecution made light of this testimony and in fact said to the Court that Chance Lange was a liar." We first note that the State never called Lange a "liar," a phrase often used by defendant in his brief. The State did call him "evasive," questioned his motivation for testifying, and referred to him as "a salesman" and "a discredited witness." Defendant is admonished to be more precise in the attribution of statements that are not supported by the record.

Defendant characterizes Lange's arrest as inconsistent with the State's position on Lange's credibility. We disagree. Lange testified that the drugs belonged either to Jordan or to him but not to defendant. Again, since the drugs could have been possessed by defendant *and* Lange (and, for that matter, Jordan), arresting Lange was in no way inconsistent with questioning Lange's credibility. One could consistently believe that Lange (according to his testimony) possessed the drugs without believing Lange's testimony that defendant did *not* possess them. Lange's admission of his own complicity did not necessarily negate defendant's complicity, and the State's actions in reliance on that admission did not contradict its characterization of Lange or its prosecution of defendant. We find no abuse of discretion in the trial court's ruling regarding evidence of the arrest of Chance Lange.

Therefore, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

BOWMAN and KAPALA, JJ., concur.